# FOR PUBLICATION



FILED
Feb 17 2014, 7:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TIMOTHY J. BURNS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RAKIEA MCCASKILL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A02-1306-CR-480 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Amy Jones, Judge
Cause No. 49F08-1212-CM-82624

**February 17, 2014**

**OPINION - FOR PUBLICATION**

**PYLE, Judge**

Rakiea McCaskill ("McCaskill") appeals her conviction for Class A misdemeanor intimidation.[1]

We reverse and remand with instructions.

ISSUE

Whether there was sufficient evidence to support McCaskill's conviction for Class A misdemeanor intimidation beyond a reasonable doubt.

FACTS

McCaskill had a relationship with Tamika Matlock's ("Matlock") husband ("Husband"), with whom she had a child. According to Matlock, Husband lied to McCaskill over the period of a year or two and told her that he was planning to leave Matlock, but he never did.

Between the night of October 28, 2012 and the morning of October 29, 2012, when McCaskill's child with Husband was approximately a year old, McCaskill called Matlock four times and told her that she "would beat [her] ass" and that "she was coming over to [Matlock's] house and [] had been sitting in front of [her] house." (Tr. 6). McCaskill also contacted Matlock on Facebook, again telling her that she was going to "beat [her] ass" and that "everybody in the city [knew she would] beat [her] ass." (Tr. 7). During one of McCaskill's phone calls, Matlock responded, "You keep putting this stuff on Facebook then come to my house like you said." (Tr. 12). During another call,

---

[1] Ind. Code § 35-45-2-1(a)(1).

2

McCaskill told Matlock that she was outside Matlock's house, so Matlock looked out the window and saw McCaskill's vehicle on the road outside.[2]

On December 10, 2012, the State charged McCaskill with Class A misdemeanor intimidation under subsection (a)(1) of the intimidation statute. The charging information provided that McCaskill had communicated a threat to Matlock with the intent that she engage in conduct against her will, namely to "leave her husband and/or cause her husband to leave her."[3] (App. 19). On May 8, 2013, the trial court held a bench trial, at which Matlock testified that "[McCaskill] kind of want[s] my husband to leave me . . . ." (Tr. 7). When asked, though, whether McCaskill "specifically said she was going to beat [Matlock's] ass because [she was] married to [Husband]," Matlock admitted that "[McCaskill] didn't say why she would beat my ass." (Tr. 8-9). Still, Matlock argued "[w]hy else would she want to beat my ass? I don't talk to her. I'm not friends with her." (Tr. 8). Subsequently, McCaskill testified and claimed that she had threatened Matlock because Matlock and Matlock's cousin had previously "jumped on [her]." (Tr. 16).

At the conclusion of the presentation of evidence, the trial court found McCaskill guilty of Class A misdemeanor intimidation. It sentenced her to 365 days with 363 days suspended. McCaskill now appeals. Additional facts will be provided as necessary.

---

[2] It is not clear from the transcript whether this happened during the same phone call where McCaskill told Matlock that "she was coming over to [Matlock's] house and [] had been sitting in front of [her] house." (Tr. 6).

[3] Notably, the Indiana Code also provides that a person may commit intimidation if that person "communicates a threat to another person, with the intent: . . . that the other person be placed in fear of retaliation for a prior lawful act." I.C. § 35-45-2-1(a)(2). Although the State moved to amend the charging information at trial to add this element to the charge, the trial court denied the State's motion.

DECISION

On appeal, McCaskill argues that the State did not provide sufficient evidence to convict her of Class A misdemeanor intimidation. The standard of review for a sufficiency of the evidence claim is that this Court should only reverse a conviction when reasonable persons would not be able to form inferences as to each material element of the offense. *Perez v. State*, 872 N.E.2d 208, 212-13 (Ind. Ct. App. 2007), *trans. denied.* We do not reweigh evidence or judge the credibility of witnesses. *Id.* at 213. In addition, we only consider the evidence most favorable to the verdict and the reasonable inferences stemming from that evidence. *Id.*

Pursuant to Indiana Code § 35-45-2-1(a), a person commits intimidation if that person "communicates a threat to another person, with the intent: (1) that the other person engage in conduct against the other person's will; [or] (2) that the other person be placed in fear of retaliation for a prior lawful act . . ." I.C. § 35-45-2-1(a). In its information, the State charged McCaskill with the intent to cause Matlock to engage in the conduct of leaving Husband against her will. McCaskill does not deny that she threatened Matlock. However, McCaskill argues that there was insufficient evidence of her intent because she never specified the reason for her threats towards Matlock. In response, the State contends that even though all of the evidence of intent was circumstantial, the inference stemming from McCaskill's relationship with Husband was sufficient to show that McCaskill intended her threats to cause Matlock to leave Husband.

First, we must note that, although there is only circumstantial evidence of McCaskill's intent, intent may be proven by circumstantial evidence. *Lee v. State*, 973

4

N.E.2d 1207, 1210 (Ind. Ct. App. 2012), *trans. denied.* Intent can be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points. *Id.* We will not reverse a conviction that rests in whole or in part on circumstantial evidence unless we can state as a matter of law that reasonable persons could not form inferences with regard to each material element of the offense so as to ascertain a defendant's guilt beyond a reasonable doubt. *Defries v. State*, 342 N.E.2d 622, 625 (Ind. 1976).

In *Casey v. State*, 676 N.E.2d 1069 (Ind. Ct. App. 1997), we considered a conviction for intimidation based on circumstantial evidence of intent. *Casey* is not directly on point because the appellant in *Casey*, Tommy Casey ("Casey"), was charged with another element of the intimidation statute, intending to place another person "in fear of retaliation for a prior lawful act" under subsection (a)(2), rather than intending to cause the person to "engage in conduct against the person's will" under subsection (a)(1). I.C. § 35-45-2-1(a). However, we find the discussion of intent in *Casey* relevant to the instant case, even though the charges are not the same.

In *Casey,* the victim, Kimberly Williamson ("Williamson") went to a bar with several friends, where she ran into Casey and her estranged husband's brother, Bryan Williamson ("Bryan"). *Casey*, 676 N.E.2d at 1071. Casey and Bryan started a fight with one of Williamson's friends, which escalated to the point that they had to leave the bar. *Id.* Later, Williamson returned to her home and started to watch television with her boyfriend and a friend. *Id.* While they were watching television, Casey appeared on her ledge outside her window. *Id.* Williamson asked him to leave, but he refused and asked

5

a companion to retrieve his gun from his car. *Id.* He told Williamson, her boyfriend, and her friend that he was going to kill all of them. *Id.* Casey then struck Williamson's boyfriend with a baseball bat and told Williamson that she was next. *Id.* However, Williamson was able to evade Casey by getting inside of her house. *Id.*

Subsequently, the State charged Casey with Class C felony intimidation, among other charges. *Id.* The trial court convicted Casey of the intimidation charge, but this Court vacated the conviction on appeal. *Id.* Our reasoning was that the evidence did not identify which of Williamson's prior lawful acts had instigated Casey's threats, even though the State advanced several plausible prior acts, such as Williamson being a patron at a bar, being at her house, and being a witness to Casey's attack on her boyfriend. *Id.* at 1073. We found it persuasive that Casey's threats "[did] not demonstrate his reasons for threatening [Williamson] or indicate that he was doing so because of any specific prior act." *Id.*

Our reasoning in *Casey* is analogous to the instant case because, like Casey, McCaskill never explained her reasons for threatening Matlock. The State argues that because McCaskill and Matlock do not have a relationship other than through Husband, McCaskill's aim must have been for Matlock to leave Husband. However, because the events leading up to the threats are not a part of the record and McCaskill never clarified her reasons for the threats, that conclusion is pure speculation. Further, we are not persuaded that it is the logical inference stemming from the evidence in the record. Matlock testified that McCaskill had engaged in a relationship with Husband for at least two years and had wanted Husband to leave Matlock. In light of the long-standing nature

6

of McCaskill's relationship with Husband and the lack of evidence that McCaskill has threatened Matlock with the intent to make her leave Husband in the past, it is not clear why McCaskill would suddenly begin to threaten Matlock with that aim.[4]

Based on these factors, we conclude that the State did not provide sufficient evidence to prove beyond a reasonable doubt that McCaskill committed Class A misdemeanor intimidation as charged, and we reverse McCaskill's conviction. However, we note that the State also argued for the lesser-included offense of harassment at trial.[5] (Tr. 15). Pursuant to Indiana Code § 35-45-2-2(a), a person who,

> with intent to harass, annoy, or alarm another person but with no intent of legitimate communication:
> (1) makes a telephone call, whether or not a conversation ensues;
> (2) communicates with a person by telegraph, mail, or other form of written communication . . .
> commits harassment, a Class B misdemeanor.

In the instant case, McCaskill made several threats to Matlock through telephone and Facebook that she was going to "beat [her] ass" and that "everybody in the city [knew she would] beat [her] ass." (Tr. 7). These statements were clearly intended to harass, annoy, or alarm Matlock and were not intended to result in legitimate communication. Additionally, McCaskill does not deny that she made these threats. As a result, we conclude that the State did produce sufficient evidence that McCaskill committed Class B misdemeanor harassment. We remand to the trial court with instructions to vacate

---

[4] Matlock did testify that there have been other instances of conflict between herself and McCaskill, but the only instances to which she testified occurred "while this case [was] pending," rather than prior to the instant offense. (Tr. 8).

[5] I.C. § 35-45-2-2(a).

McCaskill's judgment of conviction for intimidation and to enter a judgment of conviction for McCaskill for Class B misdemeanor harassment.

Reversed and Remanded with instructions.

MATHIAS, J., and BRADFORD, J., concur.