# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**KURT A. YOUNG**
Nashville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LYUBOV GORE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TODD DEWAYNE KELLY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 41A01-1311-CR-519 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Judith A. Stewart, Special Judge
Cause No. 41D02-1204-CM-775

**July 17, 2014**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

Appellant-Defendant Todd Dewayne Kelly was previously married to S.B. Kelly and S.B. are the parents of L.K. On October 4, 2011, the Johnson Circuit Court issued an ex parte order of protection which prohibited Kelly from having direct or indirect contact with S.B. On or about March 5, 2012, Kelly sent a text message to L.K. requesting that L.K. give a message to S.B. L.K. showed the text that she received from Kelly to S.B. S.B. took the message to be an attempt to threaten or intimidate her and reported the contact to the Franklin Police Department.

Appellee-Plaintiff the State of Indiana (the "State") subsequently charged Kelly with Class A misdemeanor invasion of privacy. Following a bench trial, the trial court found Kelly guilty as charged. The trial court subsequently sentenced Kelly to a one-year term of imprisonment in the Johnson County Jail, with 180 days executed and the remainder suspended, provided that Kelly refrained from contacting S.B. On appeal, Kelly contends that the State did not present sufficient evidence to sustain his conviction for Class A misdemeanor invasion of privacy. We affirm.

**FACTS AND PROCEDURAL HISTORY**

Kelly and S.B. are divorced and have a daughter, L.K. S.B. has remarried and has two children with her new husband. On October 4, 2011, the Johnson Circuit Court issued an ex parte order for protection prohibiting Kelly from having direct or indirect contact with S.B., her husband, and their two children. The protective order was set to expire on October 4, 2013.

On or about March 5, 2012, Kelly was attempting to communicate with L.K. In the months leading up to March 5, 2012, Kelly had been leaving L.K. voicemails and text messages at all times of the day and night. Some of these messages were threatening, scary, and "crazy off the wall stuff." Oct. 8, 2013 Tr. p. 44. One of these messages stated, "contacting court next week, if you see your mom tell her I said rattle, rattle, rattle." Oct. 8, 2013 Tr. p. 44. L.K. knew that because of the protective order, Kelly was not supposed to have any contact with S.B. L.K. immediately showed the text messages to S.B. and her step-father. S.B. did not know exactly what the text message meant, but she believed it to be an attempt to threaten or intimidate her because Kelly had used the phrase "rattle, rattle, rattle" as a way of intimidating S.B. when she and Kelly were still married. Oct. 8, 2013 Tr. p. 30. The comment made S.B. feel anxious, nervous, and worried.

S.B. contacted the Franklin Police Department. Soon thereafter, Officer Shawn Henson was dispatched to S.B.'s home. Officer Henson spoke to S.B. and noted that she was upset, concerned, and worried. L.K. showed Officer Henson the text messages that she received from Kelly. S.B. also notified Officer Henson of the protective order.

After speaking with S.B., Officer Henson called Kelly to talk to him about the message. Kelly indicated that he did not want to talk to Officer Henson or answer his questions. Kelly did not deny anything and told Officer Henson, "if you're going to arrest me come and arrest me." Oct. 8, 2013 Tr. p. 21. Officer Henson forwarded the case to the Johnson County Prosecutor's Office for review.

On April 24, 2012, the State charged Kelly with Class A misdemeanor invasion of

3

privacy. At some point before trial, Kelly again communicated the phrase "rattle, rattle, rattle" to S.B. via Facebook. Oct. 8, 2013 Tr. p. 29. Following a two-day bench trial that was conducted on October 8, 2013 and October 28, 2013, the trial court found Kelly guilty as charged.[1] The trial court subsequently sentenced Kelly to a term of one year in the Johnson County Jail, with 180 days executed and the remainder suspended, provided that Kelly refrained from contacting S.B. This appeal follows.

## DISCUSSION AND DECISION

Kelly contends that the evidence is insufficient to sustain his conviction for Class A misdemeanor invasion of privacy.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not

---

[1] During the two-day bench trial, Kelly was simultaneously tried for offenses charged under Cause Numbers 41D02-1204-CM-775, 41D02-1209-CM-1647, and 41D02-1204-CM-609. Kelly does not challenge

reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

The offense of invasion of privacy is governed by Indiana Code section 35-46-1-15.1, which provides, in relevant part, that "A person who knowingly or intentionally violates: … (2) an ex parte protective order issued under IC 34-26-5 … commits invasion of privacy, a Class A misdemeanor. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a).

It is undisputed that at all times relevant to this appeal, there was a valid ex parte protective order in place which prohibited Kelly from "harassing, annoying, telephoning, contacting, or directly or indirectly communicating with [S.B.]." State's Ex. A. It is also undisputed that Kelly was aware of the ex parte protective order. "Communication occurs when a person makes something known or transmits information to another." *Wright v. State*, 688 N.E.2d 224, 226 (Ind. Ct. App. 1997) (citing *Ajabu v. State*, 677 N.E.2d 1035, 1042 (Ind. Ct. App. 1997), *trans. denied*).

In challenging the sufficiency of the evidence to sustain his conviction, Kelly argues that the State failed to prove that he directly or indirectly communicated with S.B. Kelly cites to this court's opinion in *Huber v. State*, 805 N.E.2d 887 (Ind. Ct. App. 2004), in support of his challenge to the sufficiency of the evidence to sustain his conviction. In

---

any issue relating to these additional cases in the instant appeal.

5

*Huber*, the evidence demonstrated that the defendant asked a domestic violence advocate to contact the victim, who had secured protective orders against him. 805 N.E.2d at 892. The domestic violence advocate, however, told the defendant that she could not contact the victim on his behalf. *Id*. Because the domestic violence advocate specifically told the defendant that she could not convey his message to the victim, this court concluded that the record failed to demonstrate that the defendant had directly or indirectly contacted the victim. *Id*.

In the instant matter, the State presented clear evidence that Kelly indirectly communicated with S.B. During trial, the trial court heard evidence that Kelly texted L.K. stating, "contacting court next week, if you see your mom tell her I said rattle, rattle, rattle." Oct. 8, 2013 Tr. p. 44. Unlike the third party in *Huber*, L.K. did not tell Kelly that she would not give the message to S.B. Instead, L.K. immediately showed the text to S.B., with whom she lived. S.B. read the message and believed it was threatening and meant to intimidate her because Kelly had used the phrase "rattle, rattle, rattle" as a way of intimidating S.B. when she and Kelly were still married. Oct. 8, 2013 Tr. p. 30. Further, at some point before trial, Kelly again communicated "rattle, rattle, rattle" to S.B. via Facebook. Oct. 8, 2013 Tr. p. 29. The above-stated evidence is sufficient to sustain Kelly's conviction. Kelly's claim to the contrary effectively amounts to an invitation for this court to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

The judgment of the trial court is affirmed.

BARNES, J., and BROWN, J., concur.

6