**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 30 2014, 9:36 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MATTHEW J. MCGOVERN**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ARMANA COTTRELL,      )
                      )
   Appellant-Defendant,   )
                      )
       vs.          )      No.  82A04-1402-CR-074
                      )
STATE OF INDIANA,     )
                      )
   Appellee-Plaintiff.    )

APPEAL FROM THE VANDERBURGH SUPERIOR COURT 2
The Honorable J. August Straus, Judge
Cause No.  82D02-1205-FC-534

**December 30, 2014**

**MEMORANDUM DECISION- NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Following a jury trial, Armana Cottrell was convicted of Attempted Battery by Means of a Deadly Weapon,[1] a class C felony, and two counts of Intimidation,[2] class C felonies. Cottrell was sentenced to an aggregate term of four years with one year suspended to probation. Cottrell presents two issues for our review:

1. Did the trial court abuse its discretion in denying Cottrell's motion to continue her jury trial so that she could prepare to assert a defense of mental disease or defect?

2. Is the evidence sufficient to support Cottrell's convictions for intimidation?

We affirm.

On May 14, 2012, Christopher Maffett was dating Mahogany Jackson, and they had an infant child together. On that date, around 2:00 p.m., Jackson received a telephone call where someone in a professional voice asked to speak with Maffett. Jackson handed her phone to Maffett, and Maffett discovered that Cottrell was on the other end of the line. Cottrell and Maffett had an on-again, off-again dating relationship that spanned eight years, finally ending in 2000. Cottrell and Maffett have one child together.

---

[1] Ind. Code Ann. § 35-42-2-1 (West, Westlaw 2012) (battery); Ind. Code Ann. § 35-41-5-1 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly) (attempt). Effective July 1, 2014, battery with a deadly weapon was reclassified as a Level 5 felony. Because the offense in this case was committed prior to that date, it retains its prior classification as a class C felony.

[2] Ind. Code Ann. § 35-45-2-1 (West, Westlaw 2013). Effective July 1, 2014, intimidation while using a deadly weapon was reclassified as a Level 5 felony. *See* I.C. § 35-45-2-1(a), (b)(2)(A) (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly). Because the offense in this case was committed prior to that date, it retains its prior classification as a class C felony.

Cottrell and Maffett did not regularly communicate except when it was necessary for the care of their child. When Maffett told Cottrell that they did not have any reason to talk, Cottrell became irate and stated that she would slit the throat of Maffett and Jackson's infant child. Maffett knew Cottrell was "highly opposed" to his relationship with Jackson, who is Cottrell's cousin. *Transcript* at 93. After Maffett's conversation with Cottrell, Maffett became concerned for the child he shared with Jackson.

Shortly after the phone conversation with Cottrell ended, Maffett, followed by Jackson, left Jackson's residence to try to find Cottrell. Maffett first went to Cottrell's grandmother's home, but Cottrell was not there. Jackson then drove Maffett to the home of Cottrell's sister, Amber Cottrell. When they arrived, Jackson parked across the street from Amber's home. Maffett exited the vehicle and approached Amber's boyfriend, Angelo Hawes, who was standing outside of Amber's house. Hawes walked Maffett back across the street to where the car was parked and the two engaged in a short conversation. Just before Maffett and Jackson were going to leave, Cottrell stormed out of the house holding a knife in her hand and charged toward Maffett. Cottrell and Maffett engaged in a heated exchange, and Cottrell told Maffett that she was going to "cut his throat." *Id*. at 126. Hawes and Cottrell's sister restrained Cottrell and managed to get her back inside the house.

Cottrell then came out the back door of the house still holding a knife in her hand. Jackson started her vehicle and locked the doors. As Cottrell approached, Maffett tried to get into Jackson's vehicle, and eventually was able to get in through the rear, passenger door. Cottrell then rushed Jackson's vehicle and started stabbing at the driver's window

3

next to where Jackson was sitting. As Cottrell was swinging the knife at the vehicle window, she was yelling that "I haven't done what I want to do to you yet" and "let me cut 'em I just wanta (sic) slice his throat." *Id.* at 130, 134. Cottrell chipped the driver's window with the knife and cut herself during the encounter.

Officer Wayne Hunt of the Evansville Police Department was on routine patrol in the area when he heard a dispatch concerning subjects fighting. When Officer Hunt arrived on the scene he observed an individual trying to hold back a female, who ultimately broke free and ran toward an SUV parked in the street. Officer Hunt then observed the female, identified as Cottrell, try to stab through the driver's side window of the vehicle. Officer Hunt drew his TASER and ordered Cottrell to drop the knife. Cottrell threw the knife over Officer Hunt's head and then got on the ground as ordered by Officer Hunt.

On May 17, 2012, the State charged Cottrell with two counts of attempted battery by means of a deadly weapon (Counts I and II), class C felonies, and two counts of intimidation (Counts III and IV), class C felonies. At a hearing the following day, the trial court set an omnibus date for July 28, 2012. On July 9, 2012, Cottrell's counsel entered his appearance and was granted a continuance and a new omnibus date was set for September 27, 2012.[3] At a progress hearing on September 17, 2012, Cottrell's counsel indicated that he had never received her file and requested another progress hearing. The trial court re-scheduled the progress hearing and, at the State's request,

---

[3] This date comes from the chronological case summary. The transcript of the hearing at which the omnibus date was reset indicates that the omnibus date was reset for September 22, 2012.

4

reset the omnibus date for January 1, 2013. Cottrell stated that she had no objection to the new omnibus date. Thereafter, Cottrell failed to appear for numerous progress hearings, leading to continuances thereof. The trial court warned that no further continuances would be granted. Additionally, Cottrell's counsel moved to continue trial dates set for December 6, 2012 and April 1, 2013. On June 14, 2013, the trial court, over the State's objection, granted Cottrell's request to continue a June 17, 2013 trial date, and reset a new trial date for September 26, 2013 "with or without defendant present." *Appendix* at 8. On September 23, 2013, Cottrell rejected the State's plea offer and the September 26 trial date was reaffirmed.

On September 25, 2013, the day before the trial was scheduled to commence, Cottrell filed a notice of intent to raise defense of mental disease or defect. Cottrell essentially requested that the trial court continue the trial so that she could seek appropriate medical examinations in order to pursue her defense. The State objected to the notice as untimely and to any continuance that would be caused thereby. After noting that the case had been pending for over a year, the trial court denied Cottrell's belated notice to assert an insanity defense and request to continue the trial so that she may prepare an insanity defense. A two-day jury trial commenced as scheduled on September 26, 2013, at the conclusion of which the jury found Cottrell guilty of Counts I, III, and IV, and not guilty of Count II (attempted battery by means of a deadly weapon against Maffett). The trial court sentenced Cottrell to concurrent terms of four years on each count with one year suspended to probation. Cottrell now appeals.

1.

Cottrell argues that the trial court abused its discretion in denying her request to file a belated insanity defense.[4]   When a defendant intends to interpose an insanity defense for a felony, she must file a notice of that intent no later than twenty days before the omnibus date.  Ind. Code Ann. § 35-36-2-1 (West, Westlaw with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly).  If the notice is not timely filed, a court may still permit the defendant to file the notice at any time before the commencement of trial if the court finds it is in the interest of justice and the defendant makes a showing of good cause.  *Id.*  Cottrell acknowledges that her request was untimely, but contends that she presented good cause for the lateness of her notice.

Here, Cottrell filed her notice of insanity defense on the eve of trial and nearly nine months after the omnibus date.  Cottrell's counsel explained to the court that although he had known "to a certain extent" about Cottrell's alleged condition, it was not until he spoke with Cottrell's sister the previous day that he became aware of the severity of Cottrell's mental disease or defect and that Cottrell may have suffered from PTSD since childhood.  *Transcript* at 68.

We note that Cottrell failed to provide any substantiated proof of her condition and based her showing of good cause solely on the word of her sister.  We also note that Cottrell submitted documents at her sentencing hearing that show her mental health was

---

[4] The defense of insanity is set out in Ind. Code Ann. § 35-41-3-6 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly), which provides that "[a] person is not responsible for having engaged in prohibited conduct if, as the result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense."

evaluated on multiple occasions over a period of several years, the most recent of which was on April 10, 2012, a month before the incident in question. There is no evidence in the record that Cottrell's counsel attempted to procure these documents in the nearly sixteen months leading up to trial. Because these records were discoverable before trial, Cottrell cannot wait until the last minute to assert the defense and claim "good cause" for not asserting it sooner. Cottrell failed to establish good cause so as to permit the filing of a belated notice of insanity defense. *See Eveler v. State*, 524 N.E.2d 9 (Ind. 1988) (holding that the trial court did not abuse its discretion in denying a belated notice where the defendant failed to show good cause). The trial court did not abuse its discretion in this regard.

In a related argument, Cottrell argues that she was prejudiced by the trial court's refusal to continue her trial so she could submit to appropriate examinations because such refusal foreclosed her ability to mount an insanity defense. Where a motion for continuance is filed on non-statutory grounds, we review the trial court's decision to grant or deny the continuance for an abuse of discretion. *Tharpe v. State,* 955 N.E.2d 836 (Ind. Ct. App. 2011), *trans. denied.* An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court or where the record demonstrates prejudice to the defendant from a denial of the continuance. *Id.*

Having determined that the trial court did not abuse its discretion in rejecting Cottrell's untimely request to present an insanity defense, a continuance to seek evidence relating to such possible defense was not warranted. Aside from her desire to interpose

7

an insanity defense, Cottrell asserted no other grounds in support of her request to continue the jury trial. Further, as was noted above, the case had been pending for over sixteen months. During that time, Cottrell failed to appear for hearings resulting in continuances and requested the continuance of three previously set trial dates. Based on the record, we conclude that the trial court did not abuse its discretion in denying Cottrell's request to continue the trial.

2.

Cottrell contends that the evidence is insufficient to support her convictions for intimidation. Our standard of review for challenges to the sufficiency of the evidence is well settled.

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Henley v. State,* 881 N.E.2d 639, 652 (Ind. 2008). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind. 2009). Further, we note that intent may be proven by circumstantial evidence. *Lee v. State*, 973 N.E.2d 1207 (Ind. Ct. App. 2012), *trans. denied*. "Where circumstantial evidence is used to establish guilt, the question for the reviewing court is whether reasonable minds could reach the inferences drawn by the jury; if so, there is sufficient evidence." *Klaff v. State*, 884 N.E.2d 272, 274-75 (Ind. Ct. App. 2008) (quoting *Maxwell v. State*, 731 N.E.2d 459, 462 (Ind. Ct. App. 2000), *trans. denied*).

To convict Cottrell of intimidation as a class C felony, the State was required to prove beyond a reasonable doubt that Cottrell communicated a threat to commit a forcible felony with the intent that the other person be placed in fear of retaliation for a prior lawful act and that she did so while drawing or using a deadly weapon. *See* I.C. § 35-45-2-1(a)(2), (b)(2). As charged, the prior lawful act alleged in both intimidation charges was that Maffett and Jackson were "associating with" one another. *Appellant's Appendix* at 19.

Relying upon *McCaskill v. State*, 3 N.E.3d 1047 (Ind. Ct. App. 2014), Cottrell argues that the evidence does not support a finding that she made threats against Maffett and Jackson in retaliation for a prior lawful act. We are not persuaded that *McCaskill* dictates the outcome in this case. First, we note that *McCaskill* involved a different subsection of the intimidation statute that prohibits a threat to attempt to cause the other person to engage in conduct against their will. *See* I.C. § 35-45-2-1(a)(1). Further, in reversing the intimidation conviction on grounds of insufficient evidence, the court noted that the only evidence of intent was a loose connection through the victim's husband. Here, the State's evidence constituted more than a "loose connection".

To be sure, the State's evidence established that Cottrell and Maffett dated over a period of eight years and have a child together. Their relationship ended in 2000. At trial, Maffett testified that Cottrell was "highly opposed" to his romantic relationship with Jackson, who was Cottrell's cousin. *Transcript* at 93. Jackson testified that she did not think that Cottrell very happy that she was dating Maffett. On the day in question, Cottrell spontaneously called Jackson's cell phone and threatened to slit the throat of

9

Maffett and Jackson's infant son. Maffett explained that he did not have regular contact with Cottrell and that they spoke only when it was necessary for the care of the child they shared together. Maffett testified that he had no reason to speak with Cottrell when she called on the day in question. Given the totality of the evidence, a jury could have reasonably inferred that Cottrell threatened Maffett and Jackson because of their dating relationship and the fact that they shared a child.

This case is also distinguishable from *Casey v. State*, 676 N.E.2d 1069 (Ind. Ct. App. 1997), which was relied upon by the *McCaskill* court. In *Casey*, the court noted that the charging information did not specify the prior lawful act that lead to the threats and the evidence did not demonstrate a reason for the threats because of any specific prior act. Here, the State specifically noted in the charging information that the prior lawful act was that Maffett and Jackson associated with each other. The State's evidence established that Maffett and Jackson were in a relationship and, as we set forth above, a reasonable inference can be drawn from the evidence that this is what lead to Cottrell's threats. In summary, the evidence is sufficient to support Cottrell's convictions for intimidation.

Judgment affirmed.

VAIDIK, C.J., and MAY, J., concur.