

**FILED**

May 10 2017, 8:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shelly M. Phipps, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 10, 2017 <br><br> Court of Appeals Case No. <br> 28A05-1609-CR-2097 <br><br> Appeal from the Greene Superior Court <br><br> The Honorable Dena A. Martin, Judge <br><br> Trial Court Cause No. <br> 28D01-1603-F6-42 |

**Mathias, Judge.**

[1] Shelly M. Phipps ("Phipps") was convicted in Greene Superior Court of Level 6 felony invasion of privacy. Phipps appeals and raises the following dispositive issue: whether the State proved that Phipps violated a protective order by communicating with the protected person.

We reverse and remand for proceedings consistent with this opinion.

## Facts and Procedural History

Phipps was a member of a church in Solsberry, Indiana, and she and her husband were friends with K.G., the pastor of the church. In 2008, Phipps and her husband received marriage counseling from K.G, and K.G. disclosed information that he learned in their counseling sessions to the elders of the church. The church elders met with Phipps and her husband to discuss the information K.G. had disclosed to them. Phipps was also upset that K.G. hugged her twice, once during an individual counseling session and a second time on the day she was baptized.

Phipps sought an apology from K.G. for the alleged breach of confidentiality but did not receive one. She sent letters and emails to K.G. and the church elders demanding an apology.

K.G. obtained a protective order against Phipps in 2008. Phipps was prohibited from "harassing, annoying, telephoning, contacting, or directly or indirectly communicating with" K.G. and she was ordered to stay away from his residence and the church. Ex. Vol, State's Ex. 2. In 2009, she violated the protective order by speaking to K.G. at the church, and she pleaded guilty to Class A misdemeanor invasion of privacy. In 2010, Phipps violated the protective order again by sending a letter to K.G. She pleaded guilty to the offense in March 2011, and judgment was entered as a Class A misdemeanor.

[6] On January 6, 2016, in case number 28D01-1201-PO-12, K.G. filed a petition to extend the protective order. On January 25, 2016, the court held a hearing on the petition and found that the "conditions which caused the original Order for Protection to be issued continue to exist." *Id.* The court further concluded that Phipps "continues to represent a credible threat to the safety of the Petitioner or a member of the Petitioner's household" and K.G. "has shown, by a preponderance of the evidence, the threat of stalking continues to exist sufficient to justify an extension of the original Order." *Id.* Finally, the court found that Phipps is "sending letters to the Court and Church Members asking to have them forwarded to the Petitioner. She continues to harass and make threats to" K.G. *Id.* The Court extended the original protective order until February 6, 2018.

[7] On February 28, 2016, Phipps sent an email to three church elders, which is reproduced in its entirety.

> I originally sent this to my dad and now I am forwarding it. I'm off work Tuesday. I will give [K.G.] until Tuesday evening to comply. I have emailed channel 13 about doing a story. If Tuesday evening passes by then I will have him arrested for battery.
>
> I went for my counseling session yesterday. I told my counselor that I can't handle this thing between me and [K.G.] anymore. I am no longer angry, and I am beyond hurt, I think I am broken. It has ruined by life. That's exactly what I told [K.G.] when I seen him in Court a month ago. I can't handle the stress of it alone. After much consideration, I have now gone public with my story. I have talked with several high ranking officials this

week about my case. Hopefully they can intervene. I told my counselor that I believe [K.G.] owes me an apology and here's why: He broke my trust in two ways:

1) the first small way is because I told him something I thought was confidential and he said 'o.k. you can pray for us too.' He then proceeded to plaster mine and my husband's name all over the prayer list for the whole church to see. He stabbed me in the back. 2) The second big way he broke my trust is when I was in his office he came from around his desk and said "I love you Shelly," and gave me a hug. It happened again the night I was baptized. He waited for me outside the front door and said "I love you Shelly." That's TWICE!!! That is sexual harassment.

My concern is that I know he got in trouble in New Hampshire for the same type of behavior. Then he denied it, and then had death threats on him. The problem is they want to pick, pick, pick on other people's marriages when they definitely have one of their own to work on. I reported this behavior to the Elders. One Elder brought the four of us together and said "Nobody say anything because it will hurt the church." That wasn't fair. I was not allowed to say what was bothering me. That's when I started writing letters. Then that same Elder said "Shelly you need to be quiet because it makes it look like all you want is [K.G.] back. I don't want [K.G.] If I had of wanted him I could have had him when I was in his office, but that's not what I was there for. It is negligence! Needless to say it was not handled properly. The Elders need to step up and take control of this situation because it has spiraled out of control. Instead, they are sitting back and letting [K.G.] call the shots. They are his boss and they can tell him what to do. If he puts me in jail again I will just hold a news conference from my jail cell.

[K.G.] has choices: He can resign, retire, apologize or go to jail for battery. I hope he makes the right decision soon. I am more than willing to apologize for my part in this. For now, my

counselor's advising me to exercise to relieve some of the stress that's on me.

Ex. Vol., State's Ex. 1.

[8] A church elder forwarded the email to K.G. on the same day the elder received it, and K.G. contacted the police. Shortly thereafter, Phipps was charged with two counts of invasion of privacy, one as a Class A misdemeanor and one as a Level 6 felony because Phipps had two prior convictions for the same offense.

[9] A jury found Phipps guilty of both offenses. The trial court merged the two verdicts and entered a judgment of conviction for the Level 6 felony invasion of privacy charge.

[10] At the sentencing hearing, the trial court considered her prior invasion of privacy convictions and long-term harassment of K.G. as an aggravating circumstance. The court considered Phipps's mental health as a mitigating circumstance and specifically noted that "she appears to be addressing [her mental health issues] at this time with medication and counseling."[1] Appellant's App. p. 8. Phipps was ordered to serve a two-and-one-half year sentence, with a one-year placement in work release and the remainder of the sentence suspended to probation. Phipps now appeals.

---

[1] At sentencing, Phipps explained that she has Bi-Polar Disorder and previously had been unable to consistently pay for her medications. She now has new medical insurance and is able to pay for her medications, which she takes regularly. Tr. p. 208.

# Sufficient Evidence of Communication

Phipps argues that the State failed to present sufficient evidence to prove that she committed invasion of privacy.

> When we review a claim challenging the sufficiency of the evidence we neither reweigh the evidence nor assess the credibility of the witnesses. Instead, we consider only the evidence and reasonable inferences drawn therefrom that support the verdict. And we will affirm the conviction if there is probative evidence from which jury could have found the defendant guilty beyond a reasonable doubt.

*Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016) (citing *Treadway v. State*, 924 N.E.2d 621, 639 (Ind. 2010)).

To convict Phipps of Level 6 felony invasion of privacy, the State was required to prove that Phipps knowingly or intentionally violated an ex parte protective order issued under Indiana Code chapter 34-26-5 and that Phipps had a prior unrelated conviction for invasion of privacy. Ind. Code § 35-46-1-15.1((2). The State specifically alleged that Phipps harassed, annoyed, telephoned, contacted, or directly or indirectly communicated with K.G. in violation of the protective order issued under case number 28D01-1201-PO-12. Appellant's App. pp. 24-25.

[13]     It is undisputed that Phipps was aware of the protective order.[2] The issue is whether she indirectly contacted K.G. by sending the email to a church elder.

> Contact is defined as "establishing of communication with someone" or "to get in communication with." Communication occurs when a person makes something known or transmits information to another. Further, communication may be either direct or indirect and is not limited by the means in which it is made known to another person.

*C.W.W. v. State*, 688 N.E.2d 224, 226 (Ind. Ct. App. 1997) (internal citations omitted).

[14]     In *Kelly v. State*, 13 N.E.3d 902, 905 (Ind. Ct. App. 2014), this court concluded that the defendant's text to the victim's child, which stated, "if you see your mom tell her I said rattle, rattle, rattle" and was immediately shown to the victim, was sufficient evidence to prove that the defendant indirectly communicated with the victim.

[15]     Our court reached the opposite conclusion in *Huber v. State*, 805 N.E.2d 887 (Ind. Ct. App. 2004). In that case, the defendant asked a domestic violence

---

[2] Phipps' argument that the protective order was void ab initio constitutes an impermissible attack on the order issued in 2008 and extended in 2016. Phipps argues that the protective order does not meet the requirements of Indiana Code section 34-26-5-9(b). Specifically, Phipps claims that, in that protective order proceeding, no evidence was presented from which a reasonable fact finder could conclude that Phipps harassed or stalked K.G.

Phipps makes an evidentiary challenge to the protective order issued under a separate case number, an issue she could have raised if she had appealed the protective order. An order is void ab initio "if the trial court lacks the authority to provide the relief ordered under any set of circumstances." *In re Adoption of P.A.H.*, 992 N.E.2d 774, 775 (Ind. Ct. App. 2013). Phipps does not argue that the Greene Superior Court lacked authority to issue and extend the protective order K.G. acquired against her.

advocate to call the victim and speak to her on his behalf. The domestic violence advocate refused and told the defendant she could not do that. Therefore, we concluded that the defendant's attempt to contact the victim was incomplete, and we reversed his invasion of privacy conviction. *Id.* at 892.

[16] In *C.W.W.*, the State alleged that the defendant violated a "no contact" order imposed as a condition of his probation by filing a lawsuit against the doctor he was convicted of intimidating and harassing. C.W.W. appealed the probation revocation, and we concluded that "his mere act of filing a lawsuit did not constitute contact in violation of his probation." 688 N.E.2d at 226 (rejecting the State's argument that C.W.W. contacted the doctor when the sheriff served him with a summons and complaint).

[17] In this case, the State argues Phipps intended that her email would be communicated to K.G. because she sent the email "to the church elders demanding that K.G. take immediate action or face a criminal complaint." Appellant's Br. at 13. The email stated that Phipps would have K.G. arrested for battery if he did not resign from the church, retire, or apologize to her by "Tuesday evening." Ex. Vol., State's Ex. 1.

[18] The email was initially sent to Phipps' father. In the email, Phipps told her father why she believes that K.G. "broke [her] trust." *Id.* After listing those reasons, Phipps explained what actions the church elders took after she complained that K.G. 1) discussed the content of confidential conversations with other members of the church and 2) told Phipps that he loved her and

hugged her. Phipps also explained that she wrote letters to the elders and members of the church because she was not allowed to discuss the situation.

[19] Phipps then stated that "the Elders need to step up and take control of this situation because it has spiraled out of control." *Id*. She complained that the church elders allow K.G. to control the church even though he is their employee. Phipps then stated that she would hold a news conference if K.G. put her in jail again.

[20] Phipps's email is a request to the church elders to take action for the alleged wrongful conduct of their employee, K.G. Upon receipt of Phipps's email, the church elders had discretion to ignore her email or respond to her demands. Phipps did not ask the elders to share her email with K.G., and a church elder made an independent decision to forward the email to K.G. From this evidence, we conclude that Phipps's intent in sending the email was not to contact K.G., but to ask the church elders to discipline or punish K.G. for his alleged wrongful conduct. In other words, the intended recipient of the email was the church's decision-making body, not K.G. For this reason, we conclude that the State failed to prove that Phipps contacted K.G. by sending the email. We therefore reverse Phipps's conviction for Level 6 felony invasion of privacy.

[21] Reversed for proceedings consistent with this opinion.

Baker, J., concurs.

Pyle, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Shelly M. Phipps,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

Court of Appeals Case No.
28A05-1609-CR-2097

**Pyle, Judge dissenting.**

I respectfully dissent from my colleagues' decision to reverse Phipps's conviction for invasion of privacy as a Level 6 felony. The majority argues that there was insufficient evidence for the jury to conclude that Phipps intended to indirectly communicate with K.G. My colleagues correctly point out that the State was required to prove that Phipps: (1) knowingly or intentionally; (2) violated an ex parte protective order; and (3) that she had a prior conviction for invasion of privacy. IND. CODE § 35-46-1-15.1. However, I believe there was sufficient evidence for the jury to conclude that Phipps intended her email to be communicated to K.G.

In this case, Phipps argues that the State failed to prove that she intended the email sent to the church elders to be communicated to K.G. I disagree. The protective order prohibits indirect communication with a protected person. In

this case, there is direct evidence of the existence of a valid protective order, that Phipps sent a communication, and that she has a prior conviction. The only outstanding issue is Phipps's intent. It should be noted that intent can be proven by circumstantial evidence. *McCaskill v. State*, 3 N.E.3d 1047 (Ind. Ct. App. 2014). Further, intent can be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points. *Id.* "We will not reverse a conviction that rests in whole or in part on circumstantial evidence unless we can state as a matter of law that reasonable persons could not form inferences with regard to each material element of the offense so as to ascertain a defendant's guilt beyond a reasonable doubt." *Id.* at 1050.

[24] During its cross examination of Phipps, the State sought to prove her intent regarding the email. The following colloquy took place:

> **Q** Okay. You indicated that you just, the intention in writing that was for you to come back to the church. Right?
>
> **A** Right.
>
> **Q** I didn't see anything in there. [K.G.] didn't see anything in there where you asked to come back to the church. Is it in there?
>
> **A** I don't believe it is in this one, no.
>
> **Q** Well, that is the one we're here to talk about today.
>
> **A** Okay.
>
> **Q** You also stated you didn't wish [K.G.] any harm. Is that right?

**A**    No, I have never wished him harm.

**Q**    On the second page it says he can resign, retire, apologize...

**A**    That is not harming, that is not harming.

**Q**    Wait a minute, I haven't finished my question yet. Okay? Hold on. On the second page it says, he can resign, retire, apologize or go to jail for battery. Those seem like pretty harmful things other than apologizing I guess but resigning or retiring are financially harmful, going to jail is freedom of liberty.

**A**    I'm sure he has a great retirement there. They take great care of him.

**Q**    That is not my point. Those aren't pleasant things for people to go through. Those can be harmful. Wouldn't you agree?

**A**    He's been there 20 years. It's time for him to retire. I mean he is at that age.

**Q**    So you don't think that is harmful..

**A**    Not at all.

**Q**    To ask for someone to resign or retire.

**A**    My dad is retired and he's older than [K.G.].

**Q**    It says in the first part that you will give [K.G.] until Tuesday evening to comply.

**A**    Okay, I'm not sure where you're at but.

**Q**    Okay, I can point it out to you.

**A**    Okay.

**Q**    I'm on the third line of the first paragraph, right there.

**A**    Okay.

**Q**    You see that?

**A**    I see that.

**Q**    How were they supposed to let [K.G.] know your demands if they didn't communicate what was in your email to him?

**A**    I wanted the elders to take care of it. I never intended for [K.G.] to get a copy of this. The elders are his boss.

**Q**    It says here you'll give him until Tuesday evening to comply requiring him to do something. How are they supposed to take it if it is up to him to comply? How are the elders supposed to take care of something if it is up to [K.G.] to comply?

**A**    This was up to the elders. This was written to the elders.

**Q**    Okay. Again, I'll go back. It says he can resign, retire, apologize or go to jail for battery. In order to avoid doing that he has to comply with your demands by resigning, retiring, apologizing, or going to jail.

**A**    All I have ever wanted was those two little words, I'm sorry, would have taken care of it.

**Q**    How could they get him to apologize if they don't communicate your request or demands you have?

**A**    It was communicated in the last hearing at the protective order.

**Q**    I understand that but...

**A**    I stated exactly...

**Q**    Listen, this email was sent February 28th with a very specific demand on [K.G.]. Correct?

**A**    That is not how I take it at all.

**Q**    I will give [K.G.] until Tuesday evening to comply.

**A**      This was to Darrin Hamm.

**Q**      Describe those words.

**A**      Everett Chastain, Terry Keller, the elders of the church.

**Q**      Did you write those words?

**A**      Well, they're in the email.

**Q**      So did you write them?

**A**      I did.

**Q**      But yet they weren't supposed to tell him.

**A**      No, they are the, they call themselves the shepherds of the church.

**Q**      In order to get him to comply, they would have to talk to him. Right?

**A**      That is up to them if they talk to him.

**Q**      Well, how can they get him to comply if they don't talk to him, if they don't tell him what your demands are?

**A**      I don't know.

**Q**      Well, I mean think about it. You see what I'm saying?

**A**      I understand where you're trying to go but that was not the intent.

**Q**      Well, I understand you're saying that now but it's the only logical intent. It seems to me that you wanted them to talk to him. Is that right or not?

**A**      No, that is not right.

**Q**      I have no other questions.

(Tr. Vol. II, 155-158).

[25] From the evidence in the record, it seems clear that the State sought to prove through the text of the email that Phipps intended to indirectly communicate with K.G. The jury believed that when a person sends an email to a supervising authority with an ultimatum directed at a third party, the natural and probable consequence is that the email will be communicated to the third party. Here, reasonable persons could infer from Phipps's conduct (and the natural consequences to follow) that the State had proven her intent beyond a reasonable doubt. Because the jury was in the best position to disbelieve Phipps's claim of lack of intent, I would affirm Phipps's conviction. *See Love v. State*, 61 N.E.3d 290 (Ind. Ct. App. 2016) (Pyle, J., dissenting), *trans. pending*.