Pyle, Judge
dissenting.
I respectfully dissent from my colleagues’ decision to reverse Phipps’s conviction for invasion of privacy as a Level 6 felony. The majority argues that there was insufficient evidence for the jury to conclude that Phipps intended to indirectly communicate with KG. My colleagues correctly point out that the State was required to prove that Phipps: (1) knowingly or intentionally; (2) violated an ex parte protective order; and (3) that she had a prior conviction for invasion of privacy. Ind. Code § 35-46-1-15.1. However, I believe there was sufficient evidence for the jury to conclude that Phipps intended her email to be communicated to KG.
In this case, Phipps argues that the State failed to prove that she intended the email sent to the church elders to be communicated to KG. I disagree. The protective order prohibits indirect communication with a protected person. In this case, there is direct evidence of the existence of a valid protective order, that Phipps sent a communication, and that she has a prior conviction. The only outstanding issue is Phipps’s intent. It should be noted that intent can be proven by circumstantial evidence. McCaskill v. State, 3 N.E.3d 1047 (Ind. Ct. App. 2014). Further, intent can be inferred from a defendant’s conduct and the natural and usual sequence to which such conduct logically and reasonably points. Id. “We will not reverse a conviction that rests in whole or in part on circumstantial evidence unless we can state as a matter of law that reasonable persons could not form inferences with regard to each material element of the offense so as to ascértain a defendant’s guilt beyond a reasonable doubt.” Id. at 1050.
During its cross examination of Phipps, the State sought to prove her intent regarding the email. The following colloquy took place:
Q Okay. You indicated that you just, the intention in writing that was for you to come back to the church. Right?
A Right.
Q I didn’t see anything in there. [K.G.] didn’t see anything in there where you asked to come back to the church. Is it in there?
A I don’t believe it is in this one, no.
Q Well, that is the one we’re here to talk about today.
A Okay.
Q You also stated you didn’t wish [KG.] any harm. Is that right?
A No, I have never wished him harm.
*186 Q On the second page it says he can resign, retire, apologize...
A That is not harming, that is not harming.
Q Wait a minute, I haven’t finished my question yet. Okay? Hold on. On the second page it says, he can resign, retire, apologize or go to jail for battery. Those seem like pretty harmful things other than apologizing I guess but resigning or retiring are financially harmful, going to jail is freedom of liberty.
A I’m sure he has a great retirement there. They take great care of him.
Q That is not my point. Those aren’t pleasant things for people to go through. Those can be harmful. Wouldn’t you agree?
A He’s been there 20 years. It’s time for him to retire. I mean he is at that age.
Q So you don’t think that is harmful..
A Not at all.
Q To ask for someone to resign or retire.
A My dad is retired and he’s older than [K.G.].
Q It says in the first part that you will give [K.G.] until Tuesday evening to comply.
A Okay, I’m not sure where you’re at but.
Q Okay, I can point it out to you.
A Okay.
Q I’m on the third line of the first paragraph, right there.
A Okay.
Q You see that?
A I see that.
Q How were they supposed to let [K.G.] know your demands if they didn’t communicate what was in your email to him?
I wanted the elders to take care of it. I never intended for [K.G.] to get a copy of this. The elders are his boss.
It says here you’ll give him until Tuesday evening to comply requiring him to do something. How are they supposed to take it if it is up to him to comply? How are the elders supposed to take care of something if it is up to [K.G.] to comply? a
This was up to the elders. This was written to the elders.
Okay. Again, I’ll go back. It says he can resign, retire, apologize or go to jail for battery. In order to avoid doing that he has to comply with your demands by resigning, retiring, apologizing, or going to jail. a
All I have ever wanted was those two little words, I’m sorry, would have taken care of it.
How could they get him to apologize if they don’t communicate your request or demands you have? a
It was communicated in the last hearing at the protective order.
I understand that but... o?
I stated exactly... <
Listen, this email was sent February 28th with a very specific demand on [KG.]. Correct? a
That is not how I take .it at all. <
I will give [K.G.] until Tuesday evening to comply. a
This was to Darrin Hamm. <
Describe those words. a
Everett Chastain, Terry Keller, the elders of the church. <
Did you write those words? a
Well, they’re in the email. <
So did you write them? a
I did. <
*187 Q But yet they weren’t supposed to tell him.
A No, they are the, they call themselves the shepherds of the church.
Q In order to get him to comply, they would have to talk to him. Right?
A That is up to them if they talk to him.
Q Well, how can they get him to comply if they don’t talk to him, if they don’t tell him what your demands are?
A I don’t know.
Q Well, I mean think about it. You see what I’m saying?
A I understand where you’re trying to go but that was not the intent.
Q Well, I understand you’re saying that now but it’s the only logical intent. It seems to me that you wanted them to talk to him. Is that right or not?
A No, that is not right.
Q I have no other questions.
(Tr. Vol. II, 155-158).
From the evidence in the record, it seems clear that the State sought to prove through the text of the email that Phipps intended to indirectly communicate with K.G. The jury believed that when a person sends an email to a supervising authority with an ultimatum directed at a third party, the natural and probable consequence is that the email will be communicated to the third party. Here, reasonable persons could infer from Phipps’s conduct (and the natural consequences to follow) that the State had proven her intent beyond a reasonable doubt. Because the jury was in the best position to disbelieve Phipps’s claim of lack of intent, I would affirm Phipps’s conviction. See Love v. State, 61 N.E.3d 290 (Ind. Ct. App. 2016) (Pyle, J., dissenting), tram, pending.