# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 26 2020, 10:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kelly Starling
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

C.D.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff,*

October 26, 2020

Court of Appeals Case No.
20A-JV-434

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Geoffrey A. Gaither, Magistrate

Trial Court Cause No.
49D09-1911-JD-1388

**Robb, Judge.**

# Case Summary and Issue

C.D., a minor, appeals his adjudication as a juvenile delinquent based on the juvenile court's finding that he committed various acts that would be crimes if committed by an adult, including criminal recklessness, carrying a handgun without a license, dangerous possession of a firearm, and intimidation. On appeal, C.D. raises a single issue, which we restate as whether the evidence is sufficient to support the juvenile court's finding that C.D. committed intimidation. Concluding the evidence is sufficient, we affirm.

# Facts and Procedural History

On October 21, 2019, T.E. was at her mother Shaquita Emery's home when C.D. knocked on her door. T.E. testified "[C.D.] was like is [P]ap here and we was like no-we was like [P]ap not here can you please leave and that is when [C.D.] was like alright and we will be back to shoot this up, shoot this mother up." Transcript of Evidence, Volume II at 8. Pap is T.E.'s sister's boyfriend, and T.E. knew where he was but did not want to tell C.D.  T.E. saw a purple and black gun on C.D.'s hip "in his pants" but "showing" during this encounter. *Id.* at 9. After the brief conversation with C.D., T.E. had her father pick her up and take her to his home because although she did not believe C.D. was "for real[, she] was just scared a little bit" that he might come back and shoot up the house. *Id.* at 10.

[3] Later that night around 8:00 pm, Shaquita was home alone sitting upstairs in her bedroom and looking out the window "already on the look-out[,]" *id*. at 16, when she observed C.D. walk from across the street into her yard and "instantly start[] shooting" at her house, *id.* at 18. C.D. fired "at least seven" times. *Id.* at 19. Shaquita ran out of the house, called the police, and did not return until the detectives arrived.

[4] Detective Ivan Ivanov of the Indianapolis Metropolitan Police Department was on duty the night of the shooting and interviewed both Shaquita and T.E. after the incident. Shaquita and T.E. both told Detective Ivanov that C.D. was involved in the incident. Detective Ivanov subsequently obtained a search warrant for C.D.'s home which he served on November 6, finding, among other things, a purple and black nine-millimeter handgun and ammunition. C.D. was arrested.

[5] The State filed a juvenile delinquency petition alleging that C.D. had committed criminal recklessness, carrying a handgun without a license, dangerous possession of a firearm, and intimidation if committed by an adult. On December 10, a denial hearing was conducted where the juvenile court, having heard the evidence, entered a true finding on all counts.[1] At the dispositional hearing, C.D. was placed on probation with a suspended

---

[1] The carrying a handgun without a license count and the dangerous possession of a firearm count were merged for purpose of disposition. Tr., Vol. II at 76.

commitment to the Indiana Department of Correction and placed in a residential program at Campagna Academy. C.D. now appeals.

# Discussion and Decision

## I. Standard of Review

When reviewing the sufficiency of the evidence supporting a juvenile's adjudication as a delinquent, we neither reweigh the evidence nor judge witnesses' credibility. *C.D.H. v. State,* 860 N.E.2d 608, 610 (Ind. Ct. App. 2007), *trans. denied.* Rather, we consider only the probative evidence and reasonable inferences supporting the juvenile court's judgement. *M.S. v. State,* 889 N.E.2d 900, 901 (Ind. Ct. App. 2008), *trans. denied.* We will affirm the adjudication of delinquency if probative evidence exists such that a reasonable factfinder could find the elements of the underlying offense proven beyond a reasonable doubt. *Id.*

## II. Sufficiency of Evidence

C.D. contends the evidence presented by the State is insufficient to sustain the true finding that he committed intimidation. To support a finding that C.D. committed intimidation as charged, the State was required to prove that (1) C.D. communicated a threat (2) with the intent that another person engage in conduct against the other person's will. *See* Ind. Code § 35-45-2-1(a)(1).

When the State seeks to have a juvenile adjudicated a delinquent for an act that would be a crime if committed by an adult, the State must prove every element

of the crime beyond a reasonable doubt. *C.D.H.*, 860 N.E.2d at 610. A defendant's intent may be proven by circumstantial evidence alone, and knowledge and intent may be inferred from the facts and circumstances of each case. *E.B. v. State*, 89 N.E.3d 1087, 1091 (Ind. Ct. App. 2017). "We will not reverse a conviction that rests in whole or in part on circumstantial evidence unless we can state as a matter of law that reasonable persons could not form inferences with regard to each material element of the offense so as to ascertain a defendant's guilt beyond a reasonable doubt." *McCaskill v. State*, 3 N.E.3d 1047, 1050 (Ind. Ct. App. 2014).

[9] In relevant part, Indiana Code section 35-45-2-1(d) defines a threat as an "expression, by words or action, of an intention to: (1) unlawfully injure the person threatened or another person, or damage property; (2) unlawfully subject a person to physical confinement or restraint; [or] (3) commit a crime[.]" Whether a statement is a threat is an objective question for the fact finder. *Newell v. State*, 7 N.E.3d 367, 369 (Ind. Ct. App. 2014), *trans. denied*. It is undisputed that when C.D. told T.E. that he would "shoot this mother up," he was communicating a threat pursuant to Indiana Code section 35-45-2-1(d).

[10] C.D. argues that the State failed to show that he acted with the intent that T.E. engage in conduct against her will. C.D. contends there is no evidence that "C.D. threatened to shoot at the Emery's [sic] home to force [T.E.] to give him specific information about Pap's whereabouts." Brief of Appellant at 7. However, "[i]ntent is a mental function; and so, absent an admission, it can be inferred from a defendant's conduct and the natural and usual sequence to

which such conduct logically and reasonably points." *Heuring v. State*, 140 N.E.3d 270, 275 (Ind. 2020) (quotation omitted). And "intent may be proven by circumstantial evidence." *McCaskill*, 3 N.E.3d at 1050.

[11] In *McCaskill*, the defendant was in a romantic relationship with a married man. The defendant made several threats to the husband's wife including threatening physical violence. The defendant was charged with intimidation for making a threat with the intent to make the wife leave the husband. This court held that "because the events leading up to the threats are not a part of the record and McCaskill never clarified her reasons for the threats, that conclusion is pure speculation." *Id.* at 1050. We further stated that "we are not persuaded that it is the logical inference stemming from the evidence in the record." *Id.*

[12] Here, C.D. asked T.E. where Pap was and when C.D. was told Pap was not at the residence and asked to leave, he responded with "alright and we will be back to shoot this up, shoot this mother up." Tr., Vol. II at 8. Unlike *McCaskill,* the evidence here includes a description of the events occurring just prior to the threat; specifically, the brief interaction between C.D. and T.E. when C.D. asked where Pap was. And although C.D. did not state his reasons for the threat, a reasonable person could determine from the evidence that C.D.'s threat was made with the intent of inducing T.E. to disclose Pap's location. *See McCaskill*, 3 N.E.3d at 1050.

# Conclusion

Sufficient evidence supports the juvenile court's finding that C.D. committed acts that would constitute intimidation, a Class A misdemeanor, if committed by an adult. C.D.'s delinquency adjudication is therefore affirmed.

Affirmed.


Crone, J., and Brown, J., concur.