FILED

Jun 28 2019, 9:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Stanley L. Campbell
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gabriel A. Merriweather,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 28, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2270<br><br>Appeal from the Allen Superior<br>Court<br><br>The Honorable Frances C. Gull,<br>Judge<br><br>Trial Court Cause No.<br>02D05-1802-F5-42 |

**Mathias, Judge.**

[1]     Following a jury trial in Allen Superior Court, Gabriel A. Merriweather ("Merriweather") was convicted of Level 5 felony domestic battery, Level 5 felony intimidation, Level 6 felony domestic battery, and determined to be a habitual offender. The trial court sentenced Merriweather to an aggregate term

of twelve years of incarceration. Merriweather appeals and presents four issues for our review, which we restate as:

    I.       Whether the information charging him with intimidation is so flawed as to constitute fundamental error;

    II.     Whether the trial court committed fundamental error by failing to properly instruct the jury on the requirement of unanimity;

    III.   Whether the State presented evidence sufficient to support his conviction for intimidation; and

    IV.   Whether his twelve-year sentence is inappropriate.

[2]    We affirm.

## Facts and Procedural History

[3]    At the time relevant to this appeal, Merriweather lived in Fort Wayne, Indiana with his wife, S.S. The couple had one child together, and each had a child from a previous relationship. All three children lived with Merriweather and S.S. By 2018, Merriweather's marriage to S.S. was deteriorating, and, on January 9 of that year, S.S. filed for divorce but did not tell Merriweather. Although the couple had tried to work on their marriage, S.S. "didn't see it getting anywhere." Tr. p. 29. Still, S.S. told Merriweather that he and his daughter could live with her until he received money from the estate of his recently deceased father.

On January 11, 2018, S.S. picked Merriweather up from work at approximately 9:30 p.m. and returned home. At home, S.S. sat in the living room on her phone. Merriweather claims he heard what he believed to be another man on the phone with S.S. He also observed what he thought to be a hickey on her neck. According to S.S., however, she was merely on her phone playing video games. Both parties agree that Merriweather asked S.S. if they could continue to work on their relationship. S.S. responded, "no," and Merriweather briefly went into the kitchen. Tr. p. 35.

Moments later, Merriweather returned to the living room and punched S.S. in the face. He then grabbed S.S. by her ponytail and dragged her into the kitchen. S.S. begged Merriweather to stop, as their daughters were at home in their bedroom. Merriweather rammed S.S.'s head into the refrigerator, a wooden chair, and a cabinet. S.S. fell down and drew her body up into a fetal position while pleading for Merriweather to stop. Instead, Merriweather kicked S.S. and stomped on her.

Eventually, Merriweather stopped and gave S.S. a towel to wipe off her face, which was bleeding. S.S. asked to go to the hospital, but Merriweather grabbed a kitchen knife and threatened to kill her. S.S. again implored Merriweather to take her to the hospital, as she could tell her jaw was injured. This apparently persuaded Merriweather, who then left the kitchen and yelled to the girls that they needed to take their mother to the hospital. In the car, S.S. convinced Merriweather to drop her and her daughters off at her mother's house. When Merriweather left, S.S. telephoned the police. The responding officers took

photographs of S.S.'s injuries, and S.S.'s mother drove her to the hospital. At the hospital, S.S. was diagnosed with a fractured jaw. She underwent surgery to repair her injury the following day, which involved permanently implanting metal plates and screws into S.S.'s jaw. Merriweather later attempted to apologize to S.S. and told her, "you don't have to show up to court[.]" Tr. p. 51.

[7] On February 6, 2018, the State charged Merriweather as follows: Count I, Level 5 felony domestic battery; Count II, Level 5 felony intimidation; Count III, Level 6 felony domestic battery; and Count IV, Level 6 felony domestic battery. On February 19, 2018, the State amended the charging information to include an allegation that Merriweather was an habitual offender.

[8] A two-day jury trial commenced on July 10, 2018. Immediately prior to trial, the State moved to dismiss Count IV and to correct a scrivener's error regarding the spelling of S.S.'s name in the remaining counts. The trial court granted both motions, and the jury ultimately found Merriweather guilty as charged. The jury also determined that Merriweather was an habitual offender. At a sentencing hearing held on August 21, 2018, the trial court sentenced Merriweather to six years on each of the Level 5 felony convictions and to two and one-half years on the Level 6 felony conviction, to be served concurrently. The trial court then enhanced the six-year sentence on Count I by six years due to the habitual offender adjudication, for an aggregate term of twelve years of incarceration. Merriweather now appeals.

## *I. The Charging Information Did Not Constitute Fundamental Error*

[9] Merriweather first argues that the wording of the information charging him with intimidation constituted fundamental error. Merriweather admits that he did not lodge any objection to the wording of the charging information before the trial court, nor did he move to dismiss the charge. We explained in *Grimes v. State* that the

> [f]ailure to timely challenge an allegedly defective charging information results in waiver unless fundamental error has occurred. Fundamental error is an extremely narrow exception to the waiver rule, and the defendant faces the heavy burden of showing that the alleged error is so prejudicial to the defendant's rights as to make a fair trial impossible. An error in a charging information is fundamental if it mislead[s] the defendant or fail[s] to give him notice of the charges against him so that he is unable to prepare a defense to the accusation.

84 N.E.3d 635, 640 (Ind. Ct. App. 2017), *trans. denied* (citations and internal quotation marks omitted).

[10] The State charged Merriweather with Level 5 felony intimidation as follows:

> On or about the 11th day of January, 2018, in the County of Allen and in the State of Indiana, said defendant, Gabriel A. Merriweather, did, while armed with a deadly weapon, communicate a threat to [S.S.],with the intent that [S.S.] be placed in fear of retaliation for a prior lawful act or engage in conduct against her will[.]

Appellant's App. p. 14.

[11] This generally tracks the language of the governing statute, which provides:

> (a) A person who communicates a threat to another person, with the intent:
>
> > (1) that the other person engage in conduct against the other person's will; [or]
> >
> > (2) that the other person be placed in fear of retaliation for a prior lawful act;
> >
> > * * *
>
> commits intimidation, a Class A misdemeanor.
>
> (b) However, the offense is a:
>
> > * * *
>
> > (2) Level 5 felony if:
> >
> > > (A) while committing it, the person draws or uses a deadly weapon[.]

Ind. Code § 35-45-2-1.[1]

[12] Merriweather has two issues with the charging information. First, he claims that the information was improper because it failed to specify any particular act on the part of the victim for which Merriweather was seeking to place her in fear of retaliation. Merriweather is correct that we have noted before that "prosecutors' failure to specify the 'prior lawful act' in the charging information

---

[1] This section has since been amended by Pub. L. 66-2019 § 17, which will be effective July 1, 2019. We cite to the version of the statute effective on the date Merriweather committed his offense.

is a recurring issue in appeals of criminal intimidation." *Fleming v. State*, 85

N.E.3d 626, 630 (Ind. Ct. App. 2017).

[13] However, it is also well established that

> [t]he State is not required to include detailed factual allegations
> in a charging information. An information that enables an
> accused, the court, and the jury to determine the crime for which
> conviction is sought satisfies due process. Errors in the
> information are fatal only if they mislead the defendant or fail to
> give him notice of the charge filed against him. [W]here a
> charging instrument may lack appropriate factual detail,
> additional materials such as the probable cause affidavit
> supporting the charging instrument may be taken into account in
> assessing whether a defendant has been apprised of the charges
> against him.

*Gilliland v. State*, 979 N.E.2d 1049, 1061 (Ind. Ct. App. 2012) (citations and

internal quotation marks omitted).

[14] Thus, in *Fleming*, even though the charging information did not specify any

prior lawful act, we held this was not reversible error because the defendant

never filed a motion to dismiss and because the "deputy prosecutor explained

on two occasions during trial that the prior lawful act was [the victim] 'stepping

out on to his front porch which he said he did to protect his wife.'" 85 N.E.3d

at 630 (transcript citation omitted).

[15] The same is true here. Merriweather never challenged the adequacy of the

charging information prior to or during trial. And even though the charging

information does not specify a particular prior lawful act to which the threat

was aimed, the probable cause affidavit set forth that Merriweather brutally beat and then threatened to kill S.S. immediately after she rejected his request to continue to work on their relationship. The factual basis underlying the charge was therefore clear well before trial. And at trial, S.S. testified that Merriweather beat her, then threatened to kill her with a knife shortly after she told him that she no longer wanted to work to mend their marriage. Moreover, when discussing the intimidation charge during the State's closing argument, the prosecuting attorney stated that it was, "[i]ntimidation with a deadly weapon when he threatened to kill her because she wouldn't give him a second chance." Tr. p. 133. Under these facts and circumstances, we cannot say that the lack of factual details in the charging information constitutes fundamental error. *See Fleming*, 85 N.E.3d at 630.

[16] Merriweather also argues that the charging information suffers from an additional defect in that it alleged that he committed intimidation by threatening S.S. with the intent that she **either** (1) be placed in fear of retaliation for a prior lawful act **or** (2) engage in conduct against her will. Because the information alleged two ways of committing the crime of intimidation, Merriweather contends that this rendered the information bad for duplicity.

[17] We have explained before that "[o]ne of the well-established rules of criminal pleading is that there can be no joinder of separate and distinct offenses in one and the same count. A single count of a charging pleading may include but a single offense." *Vest v. State*, 930 N.E.2d 1221, 1225 (Ind. Ct. App. 2010), *trans. denied*. When one count improperly alleges two or more separate offenses,

"duplicity" occurs. *Id*. Such duplicity is unacceptable because it "'prevents the jury from deciding guilt or innocence on each offense separately and may make it difficult to determine whether the conviction rested on only one of the offenses or both.'" *Id*. (quoting 5 Wayne R. LaFave et al., *Criminal Procedure* § 19.3(c) (3d ed. 2007)). Whether a charging instrument is duplicitous generally turns on a proper construction of the criminal statute at issue. *Id*.

[18] The State may, however, allege alternative means or theories of culpability when prosecuting the defendant for a single offense. *Id*. As stated by our supreme court in *Baker v. State*:

> [A] source of concern stems from jury instructions that are delivered disjunctively or charging instruments that allege the defendant engaged in either "X" or "Y" behavior. In this regard, our jurisprudence has drawn a distinction between disjunctive instructions and charging instruments allowing for alternative means of committing an offense, versus alternative separate criminal offenses.

948 N.E.2d 1169, 1175 (Ind. 2011). There is accordingly no error when the State "merely present[s] the jury with alternative ways to find the defendant guilty as to one element," as "'[d]ifferent jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line.'" *Cliver v. State*, 666 N.E.2d 59, 67 (Ind. 1996) (quoting *Schad v. Arizona*, 501 U.S. 624, 631–32 (1991) (Souter, J., plurality opinion)); *accord Vest*, 930 N.E.2d at 1225–26.

[19] Merriweather argues that the information charging him with intimidation is duplicitous because it alleges that he committed intimidation under two

subsections. That is, he contends that he was charged with, in the words of the court in *Baker*, alternative separate offenses, not alternative means of committing one offense. We are not so sure.

[20] In support of his argument that the charging information was duplicitous, Merriweather cites *Marshall v. State*, 602 N.E.2d 144 (Ind. Ct. App. 1992), *trans. denied*, a case in which the defendant had been arrested after touching the genital area of an undercover police officer in a public restroom. The information charging the defendant with public indecency stated that he "did unlawfully and knowingly, in a public place . . . (engage in the act of sexual intercourse) (engage in deviate sexual conduct, to-wit: ____) (appear in a state of nudity) (fondle the genitals of [an undercover police officer])." *Id*. at 148. The information was based on a pre-printed form, and whoever filled out the form had failed to delete the inapplicable portions of the form. The *Marshall* court stated that this appeared to have the effect of charging the defendant with all four varieties of public indecency. *Id*. at 149. The court therefore concluded that the information was "bad for duplicity and could not have withstood attack by a timely motion to dismiss." *Id*. This would appear to support Merriweather's argument that the information charging him with intimidation was bad for duplicity.

[21] However, in *Tague v. State*, 539 N.E.2d 480, 481–82 (Ind. 1989), our supreme court held that the trial court did not abuse its discretion when it permitted the State to amend the information charging the defendant with child molesting by deviate sexual conduct to add "and/or sexual intercourse," because the crime

would be "proven in the event of either of the alternative acts described in the statute." The court concluded that the amendment simply alleged that Tague committed a single crime of child molesting by alternate means. *Id*. Thus, the amendment did not alter the theory of the case or the identity of the crime charged.

[22] Similarly, in *Cliver*, our supreme court held that the trial court did not err by permitting the State to amend the information charging defendant with conspiracy to include the specification of multiple, alternate overt acts connected by the conjunction "or." 666 N.E.2d at 67. And in *Davis v. State*, 476 N.E.2d 127, 132 (Ind. Ct. App. 1985), *trans. denied*, this court held that an indictment was not duplicitous where it alleged neglect of a child by endangerment "and/or" abandonment because it was based on two acts, either of which constituted neglect, and the State needed only to prove that the defendants either "endangered or abandoned" their child.

[23] We think this case is more akin to *Tague*, *Cliver*, and *Davis* than it is to *Marshall*. Here, the State charged Merriweather with a single criminal offense—intimidating S.S.—and alleged two means of finding him guilty of this single offense, i.e., by threatening her with the intent of either placing her in fear of retaliation for a prior lawful act *or* with the intent that she engage in conduct against her will. We therefore believe that the charging information was not bad for duplicity.

[24] But even if we were to agree with Merriweather that the charging information in the present case were duplicitous like the one in *Marshall*, the court in that case further concluded that, although the charging information was improper, it did not amount to fundamental error because it alleged that the defendant fondled the genitals of the undercover officer on a specific date and location, and the defendant failed to demonstrate how his defense was impaired by the inadequacy of the information. 602 N.E.2d at 149.

[25] The same is true here. Even if the charging information was duplicitous, it did not amount to fundamental error. The information alleged that Merriweather intimidated S.S. on a specific date and location. And it was clear from the probable cause affidavit that the State's theory of the case was that Merriweather threatened S.S. because she did not want to continue to work on their relationship. That is, Merriweather threatened S.S. with the intent to place her in fear of retaliation for her prior lawful act of wanting to end her marriage with Merriweather. And again, the prosecuting attorney specifically argued to the jury that Merriweather intimidated S.S. "because she wouldn't give him a second chance." Tr. p. 133. For all of these reasons, we conclude that the charging information did not amount to fundamental error.

## II. The Trial Court's Jury Instructions Did Not Constitute Fundamental Error

[26] In a similar vein, Merriweather contends that the trial court's manner of instructing the jury regarding jury unanimity constitutes fundamental error. The manner of instructing the jury is left to the discretion of the trial court. *Fuentes v.*

*State*, 10 N.E.3d 68, 73 (Ind. Ct. App. 2014), *trans. denied*. On appeal, we will reverse only when the instructions amount to an abuse of discretion. *Id*. To constitute an abuse of discretion, the instructions given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. *Id*. We will consider jury instructions as a whole and in reference to each other, not in isolation. *Id*. Here, Merriweather did not object to the trial court's instructions, and must therefore establish fundamental error in order for us to reverse the trial court's judgment.

> In order to be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. The error must be so prejudicial to the defendant's rights as to make a fair trial impossible. In considering whether a claimed error denied the defendant a fair trial, we determine whether the resulting harm or potential for harm is substantial. Harm is not shown by the fact that the defendant was ultimately convicted. Rather, harm is determined by whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled.

*Id*. at 74 (quoting *Baker*, 948 N.E.2d at 1178).

[27]   Merriweather's claim regarding the jury instructions mirrors his claim regarding the charging information, i.e., that the jury instruction defining the crime of intimidation permitted the jury to find him guilty of intimidation by threatening S.S. with the intent to either place her in fear of retaliation for a prior lawful act or with the intent that she engage in conduct against her will.

[28]     A similar issue was addressed by our supreme court in *Baker*. In that case, the defendant was charged with molesting three children, and the jury heard evidence that he committed multiple acts of molestation against each victim. On appeal, Baker argued that some jurors may have relied on different evidence than the other jurors to convict on each of the three counts. *Id*. at 1177. On appeal, our supreme court held that

> [t]he State may in its discretion designate a specific act (or acts) on which it relies to prove a particular charge. However if the State decides not to so designate, then the jurors should be instructed that in order to convict the defendant they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged.

*Baker*, 948 N.E.2d at 1177 (citing *People v. Jones*, 792 P.2d 643, 649–50 (Cal. 1990)); *State v. Muhm*, 775 N.W.2d 508, 520 (S.D. 2009) (following *Jones*); *Thomas v. People*, 803 P.2d 144, 153–54 (Colo. 1990) (following *Jones*)).

[29]     In *Baker*, the State did not designate which specific act or acts of molestation it relied on to support each of the three counts naming the three victims.[2] *Id*. at 1178. And the trial court instructed the jury regarding unanimity as follows:

> "Your verdicts must represent the considered judgment of each juror. In order to return a verdict of guilt or innocence you must all agree. . . . Upon retiring to the jury room the Foreperson will

---

[2] But the State was not required to do so. *See id.*

> preside over your deliberations and must sign and date the
> verdicts to which you agree. Each verdict must be unanimous."

*Id.* (record citation omitted). The *Baker* court concluded that this instruction was inadequate because it "did not advise the jury that in order to convict Baker the jury must either unanimously agree that he committed the same act or acts or that he committed all of the acts described by the victim and included within the time period charged." *Id.*

[30] Here, as in *Baker*, the charging information did not designate a specific act or acts the State relied upon to support the intimidation charge. Merriweather contends that, also as in *Baker*, the trial court's instructions did not advise the jury that in order to convict Merriweather of intimidation that it must unanimously agree that he threatened S.S. with the same intent—either to place her in fear of retaliation for a prior lawful act or that she engage in conduct against her will.[3] Thus, Merriweather argues that some of the jurors might have believed that he intimidated S.S. with the former intent, and some jurors might have believed that he intimidated S.S. with the latter intent.

---

[3] We are unable to verify Merriweather's claims regarding the trial court's instruction on unanimity, as the record before us does not contain all of the trial court's instructions to the jury. For this reason, we would be within our discretion to consider this issue waived for purposes of appeal. *See Shelby v. State*, 986 N.E.2d 345, 370 (Ind. Ct. App. 2013) (noting that it is an appellant's duty to present an adequate record clearly showing the alleged error), *trans. denied*. We review claims of instructional error by considering the instructions as a whole, and in reference to one another, not in isolation. *Fuentes*, 10 N.E.3d at 73. It is therefore critical that an appellant presenting a claim of instructional error provide the court on appeal with all of the court's instructions, not simply the one being challenged.

[31] Had Merriweather objected to the trial court's unanimity instruction and tendered the specific unanimity instruction approved of in *Baker*, we might be required to reverse his conviction. But he did neither, and this is where the similarity of his case to *Baker* dooms Merriweather's argument.

[32] The defendant in *Baker* also failed to object to the trial court's instructions or tender an instruction on the unanimity requirement. Our supreme court therefore concluded that Baker's claim of instructional error was waived. *Id*. The court further concluded that the instructional issue did not amount to fundamental error, writing:

> In this case the only issue was the credibility of the alleged victims. The only defense was to undermine the young women's credibility by, among other things, pointing out inconsistencies in their statements, and advancing the theory that they were lying in retaliation for Baker getting [one of the victims] into trouble. Essentially "this case is about whether or not these kids will lie about [Baker] and make stuff up about him. . . ." "Ultimately the jury resolved the basic credibility dispute against [Baker] and would have convicted the defendant of any of the various offenses shown by the evidence to have been committed." We conclude Baker has not demonstrated that the instruction error in this case so prejudiced him that he was denied a fair trial.

*Baker*, 948 N.E.2d at 1179 (quoting *Muhm*, 775 N.W.2d at 521).

[33] The same is true here. Merriweather's defense to the intimidation charge had nothing to do with his intent. Instead, he simply claimed that he did not threaten S.S. with a knife or intimidate her. In fact, he effectively admitted to beating S.S., but steadfastly denied threatening her with a knife. In contrast,

S.S. unequivocally testified that Merriweather threatened to kill her with a knife. And S.S.'s mother testified that, shortly after the beating, S.S. told her that Merriweather pulled out a knife and threatened to kill her after S.S. told him that she no longer wanted to be with him. Because Merriweather's intent was not the focus of his defense, we conclude, as did the court in *Baker*, that the failure to instruct the jury on the unanimity requirement was not fundamental error. *See* 948 N.E.2d at 1179; *see also Carter v. State*, 31 N.E.3d 17, 28 (Ind. Ct. App. 2015) (concluding that trial court's failure to give defendant's incomplete instruction on jury unanimity was not fundamental error where the case "largely turn[ed] on credibility."), *trans. denied*.

### III. The State Presented Sufficient Evidence to Support Merriweather's Conviction for Intimidation

[34]  Merriweather next asserts that the State failed to present sufficient evidence to support his conviction for Level 5 felony intimidation. When reviewing a claim that the evidence is insufficient to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses. *Harrison v. State*, 32 N.E.3d 240, 247 (Ind. Ct. App. 2015), *trans. denied*. We instead respect the exclusive province of the trier of fact to weigh any conflicting evidence. *Id*. We consider only the probative evidence supporting the verdict and any reasonable inferences that may be drawn from this evidence. *Id*. We will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id*.

[35]     As set forth above, to convict Merriweather of intimidation, the State was required to prove that he communicated a threat to S.S., with the intent that S.S. engage in conduct against her will or that she be placed in fear for a prior lawful act. I.C. § 35-45-2-1(a)(1).[4] To convict Merriweather of Level 5 felony intimidation, the State was further required to show that, while committing the above acts, Merriweather drew or used a deadly weapon. *Id*. at § 1(b)(2)(A).

[36]     As part of his claim that the State failed to present sufficient evidence to support his intimidation conviction, Merriweather again complains that the jury was given two means of finding him guilty. This is an argument that we have adequately addressed above. And, as discussed, it is clear from the probable cause affidavit and the prosecuting attorney's closing argument that the State's theory of the case was that Merriweather threatened to kill S.S. with a knife with the intent to place her in fear of retaliation for the prior lawful act of rejecting his request that they work on their relationship. This leads us to Merriweather's main argument on this issue, which is that the State failed to

---

[4] Merriweather also argues that there was insufficient evidence to support his conviction for intimidation because he did not threaten S.S. with the intent that she engage in conduct against her will. As explained above, the State's theory of the case did not involve this means of committing the crime of intimidation. And because there is sufficient evidence to show that Merriweather committed intimidation by threatening S.S. with the intent that she be placed in fear of retaliation for a prior lawful act, we need not address whether there was sufficient evidence to convict Merriweather on this alternative theory.

prove that he threatened S.S. with the intent to place her in fear of retaliation for a prior lawful act.[5]

[37] "'[I]t is apparent that the legislature intended to require the State to prove that the victim had engaged in a prior act, which was not contrary to the law, and that the defendant intended to repay the victim for the prior lawful act.'" *Fleming*, 85 N.E.3d at 630 (quoting *Casey v. State*, 676 N.E.2d 1069, 1072 (Ind. Ct. App. 1997)). Merriweather notes that, when S.S. was asked why he threatened to kill her, she indicated that she did not know. Tr. p. 37. However, immediately thereafter, S.S. testified that the whole incident started after she stated she no longer wanted to work on their marriage. *Id*. Intent is a mental function and, absent a confession, usually must be proved by circumstantial evidence. *Hightower v. State*, 866 N.E.2d 356, 368 (Ind. Ct. App. 2007), *trans. denied*; *see also McCaskill v. State*, 3 N.E.3d 1047, 1050 (Ind. Ct. App. 2014) (noting that the requisite intent under the intimidation statute may be proved by circumstantial evidence). "Intent can be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points." *McCaskill*, 3 N.E.3d at 1050. On appeal, we will not reverse a conviction that rests in whole or in part on circumstantial evidence unless we can state as a matter of law that reasonable persons could not form inferences with regard to each material element of the offense so as to ascertain a

---

[5] Merriweather makes no argument that there was insufficient evidence that he threatened S.S. He claims only that there was insufficient evidence to prove that he made the threat with the intent to place S.S. in fear of retaliation for a prior lawful act or with the intent that she engage in conduct against her will.

defendant's guilt beyond a reasonable doubt. *Id*. (citing *Defries v. State*, 264 Ind. 233, 342 N.E.2d 622, 625 (1976)).

[38] Considering only the evidence favorable to the jury's verdict, we conclude that the evidence presented by the State is sufficient to support Merriweather's conviction for intimidation. As set forth above in the statement of facts, Merriweather asked his then-wife S.S. if they could work on their relationship. When S.S. responded negatively, effectively announcing her desire to end her marriage, Merriweather brutally beat her, pulled a knife on her, and threatened to kill her. From this, the jury could reasonably infer that Merriweather threatened to kill S.S. with the knife with the intent that she be put in fear of retaliation for the prior lawful act of refusing to work on her relationship with Merriweather.

[39] As we held in *Chastain v. State*, 58 N.E.3d 235, 241 (Ind. Ct. App. 2016), *trans. denied*, "a conviction under the intimidation statute should not depend upon a precise parsing of the threatening language used by a defendant or a detailed timeline of when a threat was issued in relation to a prior lawful act." (citing *Roar v. State*, 52 N.E.3d 940, 944 (Ind. Ct. App. 2016), *trans. granted*, *adopted in relevant part*, 54 N.E.3d 1001 (Ind. 2016)). What is required is that there be a clear nexus between the prior lawful act and the defendant's threat. *Id*.

[40] In *Chastain*, the victim decided to intervene when he saw the defendant verbally abuse and shove a woman. *Id*. at 236. After exchanging words with the victim, Chastain retrieved a handgun from his truck, cocked it, pointed it at the victim

and stated, "I'll f***ing kill you," several times. *Id.* at 237 (record citation omitted). Although the charging information did not specify what prior act the victim had engaged in for which Chastain intended to place him in fear of retaliation, at trial, the prosecutor argued that the prior lawful act was the victim's interruption of the fight between Chastain and the woman. *Id.* On appeal, we affirmed the conviction, holding:

> we believe that persons in a position like that in which [the victim] found himself should be able to attempt to defuse situations like the one between Chastain and [the woman] without being threatened with the use of deadly force for doing so. We believe the legislature intended to criminalize such conduct when it enacted the intimidation statute. To the extent Chastain contends that [the victim] was engaged in a continuing act of interfering with Chastain's argument when the threat was issued, the reasonable inference most favorable to the jury's verdict is that Chastain intended to threaten [the victim] for his prior, completed lawful act of having already interrupted Chastain's argument. There is no requirement in the intimidation statute that the prior lawful act has to be completed for any considerable length of time before a threat is made.

*Id.* at 240–41.

[41]    We followed *Chastain* in *Fleming v. State*, 85 N.E.3d 626 (Ind. Ct. App. 2017). In that case, the victim walked onto his porch after he heard the defendant yell obscenities at the victim's wife. When he did so, Fleming cursed at the victim. When the victim did not respond, Fleming stated that he was "going to come over and 'kick [the victim's] ass because [the victim] came out" onto his porch. *Id.* at 632 (transcript citation omitted). We held that this was sufficient to show

that the victim committed "a distinct lawful act by stepping out onto his porch when he heard his wife being insulted," and that Fleming's threats were in direct response to this. *Id.*

[42] The same is true here. S.S. committed a distinct lawful act—refusing Merriweather's request to work on their relationship—and Merriweather then almost immediately attacked S.S. and threatened to kill her. It is clear that Merriweather's threat was in direct response to S.S.'s prior lawful act. We therefore find this case distinguishable from those in which this court has previously held that the evidence was insufficient to show that the defendant's threat was in response to a prior lawful act. *See, e.g.*, *Blackmon v. State*, 32 N.E.3d 1178, 1182–83 (Ind. Ct. App. 2015) (evidence insufficient to show that defendant threatened victim with intent to place victim in fear of retaliation for the prior lawful act of stealing water from his daughter's home where there was no evidence that he actually caught the victim stealing water and defendant did not pull knife until after victim threatened to call the police); *Ransley v. State*, 850 N.E.2d 443, 446–47 (Ind. Ct. App. 2006) (evidence insufficient to support conviction for intimidation where defendant threatened victim with the intent that victim not come onto his property, which is not a prior act), *trans. denied*; *Casey*, 676 at 1072–73 (evidence insufficient to support intimidation conviction where State did not specify which of victim's prior acts led to the threats and only alleged that defendant threatened victim with baseball bat and said, "you're next, bitch," and there was no evidence that threat was directed toward victim's prior actions).

[43] In short, the State presented sufficient evidence to show that Merriweather threatened S.S. to place her in fear of retaliation for the prior lawful act of rejecting his proposal to work on their marriage.

### IV. Merriweather's Twelve-Year Sentence is Not Inappropriate

[44] Lastly, Merriweather argues that his twelve-year sentence is inappropriate. Even if a trial court acts within its statutory discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. *Trainor v. State*, 950 N.E.2d 352, 355–56 (Ind. Ct. App. 2011), *trans. denied* (citing *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007)). This authority is implemented through Indiana Appellate Rule 7(B), which provides that the court on appeal "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[45] Although we may revise a sentence on appeal, we still exercise deference to a trial court's sentencing decision, as Appellate Rule 7(B) requires us to give "due consideration" to that decision, and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* The principal role of appellate review should be to attempt to "leaven the outliers" and identify guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve what we perceive to

be a "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).

[46] Our review under Appellate Rule 7(B) should focus on "the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* The question is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. *Rose v. State*, 36 N.E.3d 1055, 1063 (Ind. Ct. App. 2015). It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). When we review the appropriateness of a sentence, we consider "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224.

[47] Merriweather was convicted of Level 5 felony domestic battery, Level 5 felony intimidation, and Level 6 felony domestic battery. The sentencing range for a Level 5 felony is one to six years, with an advisory sentence of three years. Ind. Code § 35-50-2-6(b). The sentencing range for a Level 6 felony is six months to two and one-half years, with an advisory sentence of one year. Ind. Code § 35-50-2-7(b). As a result of the habitual offender adjudication, the trial court was also required to enhance one of Merriweather's sentences by two to six years. *See* Ind. Code § 35-50-2-8(i)(2).

[48]     The trial court sentenced Merriweather to concurrent sentences of six years on the Level 5 felony domestic battery conviction, six years on the Level 5 felony intimidation conviction, and two and one-half years on the Level 6 domestic battery conviction. The trial court also enhanced the sentence on Count I by six years due to the habitual offender finding, for an aggregate sentence of twelve years.[6]

[49]     We first address the nature of the offense. Merriweather brutally attacked S.S. because she rejected his request that they work on their deteriorating marriage. He also appears to have been jealous, as he claimed to have heard S.S. speaking on the telephone with another man. Merriweather struck S.S. with such ferocity that he broke her jaw, which required surgery to mend. As a result, S.S. now permanently has metal plates and screws in her jaw. Merriweather also slammed S.S.'s head into a kitchen appliance and furniture. Then, he stomped on her while she was in a fetal position on the floor. He also threatened to kill her with a knife. And he did all of this while his children and S.S.'s children

---

[6] Although Merriweather notes that he was sentenced to the maximum possible on each count and also received the most severe habitual offender enhancement, the trial court did order all the sentences to be served concurrently. Thus, although Merriweather received a severe sentence, he did not receive the maximum possible sentence.

Neither domestic battery nor intimidation are "crimes of violence" for purposes of the consecutive sentence statute, Indiana Code section 35-50-1-2(a), and the most serious crime for which Merriweather was convicted was a Level 5 felony. Thus, even if the trial court opted to impose consecutive, as opposed to concurrent, sentences, the consecutive terms could not exceed seven years. *See id.* at § 2(d)(2). Thus, the most the trial court could have sentenced Merriweather to was twelve years plus additional consecutive sentences not to exceed seven years, for a maximum statutory sentence of nineteen years.

were in the home. He later attempted to avoid responsibility for his criminal actions by telling S.S. that she did not have to testify against him. *See* Tr. p. 51.

[50] In addition to the brutal nature of Merriweather's offenses, his sentence is further supported by Merriweather's character, as evidenced by his extensive criminal history. Following juvenile probation in 1985 for what would have been burglary if committed by an adult, Merriweather continued to commit numerous crimes and has since been convicted of five felonies and eight misdemeanors. Specifically, he was convicted for Class B felony burglary in 1988, Class C felony burglary in 1998, Class C felony carrying a handgun without a license in 2001, and two counts of Class D felony domestic battery in 2010. His misdemeanor convictions include criminal trespass, possession of marijuana, operating a motor vehicle with a suspended license, false informing, domestic battery, and invasion of privacy. He has also had his parole and probation revoked.

[51] We have noted before that "the significance of a defendant's criminal history varies based on the gravity, nature, and number of prior offenses as they relate to the current offense." *Chappell v. State*, 966 N.E.2d 124, 134 (Ind. Ct. App. 2012), *trans. denied*. Here, not only does the sheer number of Merriweather's prior convictions reflect poorly on his character, so too does the fact that three of these prior convictions were for domestic battery. *See id.* (holding that defendant's prior convictions for breaking and entering and trespass reflected poorly on his character as it related to his instant conviction for burglary); *see also Wooley v. State*, 716 N.E.2d 919, 929 n.4 (Ind. 1999) (noting that a prior

conviction for Operating While Intoxicated ("OWI") would be a significant aggravator in a subsequent alcohol-related offense); *Simmons v. State*, 962 N.E.2d 86, 93 (Ind. Ct. App. 2011) (noting that prior OWI convictions, as they related to present offense of OWI, reflected poorly on defendant's character and justified imposition of maximum eight-year sentence).

[52] Considering both the brutal nature of Merriweather's offenses and his poor character, as reflected by his extensive criminal history, we can only conclude that the twelve-year sentence imposed by the trial court was not inappropriate.

# Conclusion

[53] The information charging Merriweather with intimidation did not constitute fundamental error due to duplicity, nor did the trial court fundamentally err in instructing the jury regarding the intimidation charge. Further, the State presented evidence sufficient to support Merriweather's conviction for Level 5 felony intimidation, and, lastly, Merriweather's aggregate sentence of twelve years is not inappropriate. Accordingly, we affirm the judgment of the trial court.

[54] Affirmed.

May, J., and Brown, J., concur.