# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 02 2020, 8:11 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy P. Broden
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Joseph W. Kruger,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 2, 2020

Court of Appeals Case No.
20A-CR-797

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause No.
79D02-1910-F3-39

**Mathias, Judge.**

[1]     Joseph W. Kruger ("Kruger") pleaded guilty in Tippecanoe Superior Court of Level 3 felony armed robbery, Level 3 felony attempted armed robbery, and

two counts of Level 5 felony robbery. He also admitted to being an habitual offender. The trial court sentenced Kruger to an aggregate term of forty years of incarceration. Kruger appeals and argues that this sentence is inappropriate.

We affirm.

## Facts and Procedural History

In the latter part of 2019, Kruger went on a bank robbery spree. On August 5, he went inside a bank branch in Lafayette, Indiana and pointed what appeared to be a firearm, but in reality was a BB pistol, at the door greeter. He then handed a teller a note that ordered her to give him cash. On August 26, Kruger, who was wearing a fake beard and a hat to disguise his identity, entered a branch of another bank in Lafayette. Again, he handed a teller a note. This note had written on it, "This is a robbery, I have a gun. Give me the money. No die [sic] packs, no GPS tracker, no alarms." Appellant's Conf. App. p. 95. The teller gave Kruger money from his till, and Kruger fled. On October 3, Kruger went to a branch of another bank in Lafayette wearing a wig and a surgical mask. He then demanded the teller to give him cash, which the teller did. Lastly, on October 22, Kruger went to yet another bank branch in Lafayette, again wearing a fake beard, and handed the teller a note stating, "This is a robbery. I have a gun. No dye packs. No GPS tracers, No alarms." *Id*. at 101. The teller complied with Kruger's demands and gave him cash. The following morning, the police apprehended Kruger at a hotel in Shelbyville, Indiana.

[4] As a result of these incidents, the State charged Kruger on October 29, 2019, with three counts of Level 3 felony armed robbery, three counts of Level 6 felony theft, and Class A misdemeanor theft. The State also alleged that Kruger was an habitual offender. On February 18, 2020, Kruger entered into an agreement with the State wherein he agreed to plead guilty to one count of Level 3 felony armed robbery, one count of Level 3 felony attempted armed robbery, and two counts of Level 5 felony robbery, and admitted to being an habitual offender. In exchange, the State dismissed the other charges. Per the plea agreement, sentencing was left to the discretion of the trial court.

[5] On April 1, 2020, the trial court accepted the plea agreement and sentenced Kruger to twelve years on both of the Level 3 felony convictions, five years on each of the Level 5 felony convictions. The trial court also imposed a six-year habitual offender enhancement to the sentence on the Level 3 felony armed robbery conviction. The court ordered the sentences to be served consecutively, for an aggregate term of forty years of incarceration. Kruger now appeals.

## Discussion and Decision

[6] Kruger's sole argument on appeal is that his aggregate forty-year sentence is inappropriate. Indiana Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[7] Although we may revise a sentence on appeal, we still exercise deference to a trial court's sentencing decision, as Appellate Rule 7(B) requires us to give "due consideration" to that decision, and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. *See Merriweather v. State*, 128 N.E.3d 503, 517 (Ind. Ct. App. 2019), *trans. denied*. Indeed, sentencing is "'principally a discretionary function in which the trial court's judgment should receive considerable deference'" on appeal. *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008)). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Id.*

[8] Accordingly, "[t]he principal role of appellate review should be to attempt to 'leaven the outliers' and identify guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve what we perceive to be a 'correct' result in each case. *Merriweather*, 128 N.E.3d at 517 (quoting *Cardwell*, 895 N.E.2d at 1225). Moreover, "[o]ur review under Appellate Rule 7(B) should focus on 'the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count.'" *Id.* And the question is not whether another sentence is more appropriate but whether the sentence imposed is

inappropriate. *Id.* at 517–18 (citing *Rose v. State*, 36 N.E.3d 1055, 1063 (Ind. Ct. App. 2015)).

[9] On appeal, it is the defendant's burden to persuade us that the sentence imposed by the trial court is inappropriate. *Id.* at 518 (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)). "When we review the appropriateness of a sentence, we consider 'the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case.'" *Id.* (citing *Cardwell*, 895 N.E.2d at 1224).

[10] In the present case, Kruger was convicted of two Level 3 felonies and two Level 5 felonies. He also admitted to being an habitual offender. The sentencing range for a Level 3 felony is three to sixteen years, with an advisory sentence of nine years. Ind. Code § 35-50-2-5(b). The sentencing range for a Level 5 felony is one to six years, with an advisory sentence of three years. I.C. § 35-50-2-6(b). And the trial court must sentence a person found to be an habitual offender to additional fixed term that is between "six (6) years and twenty (20) years, for a person convicted of murder or a Level 1 through Level 4 felony." Ind. Code § 35-50-2-8(i)(1). Thus, Kruger faced a maximum sentence of sixteen years on each of the Level 3 felony convictions and six years on each of the Level 5 felony convictions, plus an additional term of up to twenty years on the habitual offender enhancement, for a maximum term of sixty-four years. The trial court instead imposed an aggregate sentence of forty years—well above the minimum, but also well below the maximum. It is with this in mind that we consider the appropriateness of Kruger's sentence.

[11] Considering the nature of Kruger's offenses, we note that he went on a spree of four bank robberies to support his gambling habit. While robbing the banks, Kruger hid his identity, and, at least on one occasion, brandished what appeared to be a firearm. He also pointed his weapon at others to intimidate them into complying with his demands. Kruger's robbery notes indicated that he was a sophisticated criminal with knowledge of robbery deterrents such as dye packs and GPS trackers. Although certainly not the most brutal of bank robbers, there is little about the nature of Kruger's offenses that mitigates in favor of reducing his sentence.

[12] Kruger's sentence is further supported by his character, as revealed by his extensive history of delinquent and criminal behavior. As a juvenile, Kruger was adjudicated a delinquent child in Illinois for committing acts that would constitute two counts of theft, one count of theft of a firearm, and one count of residential burglary if committed by an adult. He was also the member of a criminal street gang. In 1998, Kruger was convicted in Illinois as an adult of Class 1 felony aggravated discharge of a firearm and sentenced to eight years of incarceration. He was released on parole on this charge in April 2001. Later that same year, he was charged in federal court with bank robbery by violence or force, two counts of forcing a person to accompany him during the attempted commission of bank robbery and brandishing a firearm during a violent crime. Kruger was convicted on all but the first charge and sentenced to a total of 204 months of incarceration with three years of probation. Kruger's prior convictions, as they relate to his current offenses, reflect very poorly on his

character. *See Simmons v. State*, 962 N.E.2d 86, 93 (Ind. Ct. App. 2011) (holding that defendant's prior convictions for drunken driving reflected very poorly on his character as it related to his current offense of operating a vehicle while intoxicated) (citing *Wooley v. State*, 716 N.E.2d 919, 929 n.4 (Ind. 1999)). In addition, Kruger was also on probation for his federal crimes when he committed the instant offenses. And, at the time of sentencing, he had pending charges in Clark County for armed robbery and pending federal charges for bank robbery and theft in Illinois.

## Conclusion

[13] In short, there is nothing about either the nature of Kruger's offenses or his character as an offender that persuade us that his sentence is an outlier that needs to be revised. We therefore affirm the judgment of the trial court in all respects.

[14] Affirmed.

Bradford, C.J., and Najam, J., concur.