## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 30 2020, 8:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael L. Clark, *Appellant-Defendant,* | September 30, 2020 |
| v. | Court of Appeals Case No. 20A-CR-208 |
| | Appeal from the Madison Circuit Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Angela Warner Sims, Judge |
| | Trial Court Cause No. 48C01-1810-F5-2654 |

**Crone, Judge.**

# Case Summary

[1] Michael L. Clark appeals his convictions, following a jury trial, for level 5 felony intimidation and level 5 felony battery. He asserts that the State presented insufficient evidence to support his intimidation conviction and that the prosecutor committed misconduct during closing argument resulting in fundamental error. Finding the evidence sufficient, and that Clark has not met his burden to establish fundamental error, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the convictions indicate that sometime in 2015, Julianna Hollandsworth became J.B.'s home health assistant. The two women became friends, and J.B. came to know Hollandsworth's boyfriend, Clark. In September 2018, Hollandsworth and Clark were in the process of moving and had nowhere to stay when they temporarily moved in with J.B. for a weekend. J.B. told Hollandsworth that she had "a lot of painting to do" for her landlord, so Hollandsworth said that Clark would help her paint in exchange for staying in J.B.'s home. Tr. Vol. 1 at 170.

[3] When Hollandsworth arrived at J.B.'s home, she started doing her laundry. J.B. inquired about it, and the two women agreed that Hollandsworth would pay J.B. five dollars for two loads of laundry. Clark arrived later and began painting J.B.'s bathroom. J.B. confronted Clark and criticized the job he was doing by questioning his use of a paint brush instead of a roller, and also noting that she could still see the original color behind the new paint.

[4] A couple days later, J.B. was in her bedroom when she sent Hollandsworth a text message saying, "Please leave the money for the laundry on the table." *Id.* at 95. Hollandsworth responded that she did not have any cash, and J.B. responded by texting, "Well, I told you to leave me the money on the table." *Id.* Hollandsworth then came into J.B.'s bedroom and started "pointing her finger" at J.B. *Id.* at 98. An argument broke out, and Hollandsworth stated, "I told you I was going to pay you tomorrow. I don't know why you're being so adamant about laundry money. It's only five (5) dollars." *Id.* at 177. Hollandsworth left J.B.'s bedroom, and J.B., who was now upset, followed Hollandsworth into the living room. The two women were cussing and arguing when Clark heard the commotion and came into the room and started to intervene. Clark was aware of what the women were arguing about because J.B. kept loudly saying, "You owe me for laundry." *Id.* at 179.

[5] The arguing continued, with all three individuals calling each other terrible names. At some point, Clark "snatched" J.B. up by her neck and pushed her against the wall. *Id.* at 99. While doing so, he dropped the car keys he was holding without noticing. J.B. told the couple that they needed to gather their things and leave her apartment. After gathering their belongings, the couple started to leave but could not find the car keys. Believing that J.B. had hidden the keys, Clark and Hollandsworth confronted J.B., and J.B. pointed to the area where she believed Clark had dropped the keys earlier. Before leaving the apartment, Clark "jumped on" J.B. as she sat on the loveseat. *Id.* Clark grabbed a glass-encased candle from the coffee table and began striking J.B. on

the side of the head with it. J.B. tried to reach for her phone to call for help, but Clark grabbed her phone and threw it against the wall and then hit J.B. again with the candle. Clark then picked up a glass ashtray and hit J.B. another five times in the head. As he was striking her, Clark told J.B. that she would not ever be calling him a "bitch" again. *Id.* at 100.

[6]   Clark eventually stopped, and when J.B., who was bleeding profusely, ran toward the door to take herself to the hospital, Clark stated, "Don't leave, I'm gonna kill you." *Id.* at 105, 128. J.B. ran to a neighbor's home for help. The neighbor called 911 and reported that J.B. was covered in blood and that Clark had threatened to kill her.

[7]   On October 17, 2018, the State charged Clark with level 5 felony criminal confinement, level 5 felony intimidation, level 5 felony battery by means of a deadly weapon, level 6 felony battery resulting in moderate bodily injury, class A misdemeanor interference with reporting of a crime, and class A misdemeanor criminal mischief. Prior to the start of the jury trial, on November 20, 2019, the State moved to dismiss the criminal confinement and criminal mischief charges. At the conclusion of trial, the jury found Clark guilty of level 5 felony intimidation and both level 5 and level 6 felony battery, but not guilty of class A misdemeanor interference with reporting of a crime. The trial court subsequently vacated the level 6 felony battery conviction and entered judgment of conviction on level 5 felony intimidation and level 5 felony battery. The court sentenced Clark to consecutive sentences of two years for

intimidation and four years for battery, with two years suspended to probation. This appeal ensued.

# Discussion and Decision

## Section 1 – The State presented sufficient evidence to support Clark's intimidation conviction.

[8] Clark challenges the sufficiency of the evidence supporting his intimidation conviction. In reviewing a sufficiency claim, we neither reweigh the evidence nor assess the credibility of witnesses. *Cannon v. State*, 142 N.E.3d 1039, 1042 (Ind. Ct. App. 2020). We consider only the evidence most favorable to the judgment and the reasonable inferences supporting it. *Id*. It is "not necessary that the evidence 'overcome every reasonable hypothesis of innocence.'" *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007) (quoting *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995)). "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).

[9] Indiana Code Section 35-45-2-1(a)(2) provides that "[a] person who communicates a threat with the intent ... that another person be placed in fear of retaliation for a prior lawful act ... commits intimidation," a class A misdemeanor. However, the offense is a level 5 felony if, "while committing it, the person draws or uses a deadly weapon." Ind. Code § 35-45-2-1(b)(2)(A). It is clear that the legislature intended to require the State to prove that the victim

had engaged in a prior act, which was not contrary to the law, and that the defendant intended to repay the victim for the prior lawful act. *Merriweather v. State*, 128 N.E.3d 503, 515-16 (Ind. Ct. App. 2019), *trans. denied*. Here, the State charged, in pertinent part, that Clark threatened J.B. with the intent that J.B. "be placed in fear of retaliation of a prior lawful act, to wit: attempting to collect a debt owed," and that Clark drew a deadly weapon while committing the offense, "to wit: a glass candle and/or glass ash tray." Appellant's App. Vol. 2 at 42.

[10] Clark first asserts that the State presented insufficient evidence that his behavior toward J.B. was in retaliation for a prior lawful act because there was no evidence that "there was a valid debt in existence to be collected by [J.B.]" Appellant's Br. at 11. To the contrary, J.B. testified that she and Hollandsworth had entered into an agreement pursuant to which Hollandsworth would pay J.B. five dollars in exchange for J.B. permitting Hollandsworth to do laundry at J.B.'s apartment. Hollandsworth also testified that she had agreed to pay J.B. five dollars for the laundry because it was cheaper than doing it at the laundromat. Moreover, both J.B. and Hollandsworth confirmed that the argument that occurred and led to the violence and Clark's resulting threat to kill J.B. was based upon the monetary agreement.

[11] Still, Clark maintains that there is no evidence that he had the requisite intent to commit intimidation because there was no evidence that he knew what the women were fighting about when he intervened, beat J.B., and threatened to

kill her. Intent is a mental function and, absent a confession, usually must be proved by circumstantial evidence. *Merriweather*, 128 N.E.3d at 515. "Intent can be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points." *Id.*

[12] Here, the evidence established that Clark was in the next room when he overheard a very heated argument between Hollandsworth and J.B. Hollandsworth testified that Clark clearly knew what she and J.B. were arguing about when he intervened because J.B. was loudly and repeatedly saying, "You owe me for laundry." Tr. Vol. 1 at 179. From this evidence, the jury could reasonably infer that Clark threatened to kill J.B. with the glass candle/ash tray with the intent that she be put in fear of retaliation for the prior lawful act of trying to collect the money owed for the laundry. The State presented sufficient evidence to support the conviction.

## Section 2 – Clark has not met his burden to establish fundamental error.

[13] Clark next asserts that the prosecutor committed misconduct during closing argument resulting in fundamental error. We disagree.

[14] In reviewing a claim of prosecutorial misconduct that was properly raised in the trial court, we determine "(1) whether misconduct occurred, and if so, (2) 'whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected' otherwise." *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014) (citation omitted). "A

prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct." *Id*. Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. *Id*. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id*. To preserve a claim of prosecutorial misconduct, the defendant must request an admonishment to the jury at the time the alleged misconduct occurs and, if further relief is desired, move for a mistrial. *Id*.

[15] Here, Clark admittedly did not object or request an admonishment as to any closing comments made by the prosecutor. A claim of prosecutorial misconduct is waived if there is no contemporaneous objection. *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002). Where a claim of prosecutorial misconduct has not been properly preserved, our standard for review is different from that of a properly preserved claim. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). In such circumstances, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. *Ryan*, 9 N.E.3d at 667-68. Fundamental error is an extremely narrow exception to the waiver rule. *Cooper*, 854 N.E.2d at 835. In establishing fundamental error, the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to "make a fair trial impossible." *Ryan*, 9 N.E.3d at 668. In other words, the defendant must show that, under the circumstances, the trial judge erred in not sua sponte raising the issue because

alleged errors (a) "constitute clearly blatant violations of basic and elementary principles of due process" and (b) "present an undeniable and substantial potential for harm." *Id.* (citations omitted). "Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error." *Id.*

[16] During trial, regarding the battery charges, Clark presented evidence that J.B. provoked the violence and that he was simply acting in self-defense. In response to Clark's claim of self-defense, the prosecutor commented during the State's rebuttal closing, "If you think that [J.B.] was a little bit at fault here, probably provoked him a little bit more … [t]he Judge can look at that and decide what to do. That's not your job to say that …." Tr. Vol. 2 at 10. Clark asserts that this comment by the prosecutor inappropriately infringed on the jury's authority to decide the law and the facts. *See* IND. CONST. art. 1, § 19 ("In all criminal cases whatever, the jury shall have the right to determine the law and the facts.").

[17] However, our review of the entirety of closing arguments does not support Clark's extreme characterization of the prosecutor's isolated statement. Indeed, the prosecutor repeatedly reminded the jury that it was the jury's job alone to apply the law to the facts of the case, and that the trial judge was tasked with determining the appropriate sentence for the crimes. The prosecutor explained that although J.B.'s behavior may indeed have provoked Clark, it was for the

jury to decide if Clark's response of repeatedly smashing a glass candle holder into the side of J.B.'s head was a reasonable and proportionate response to any alleged provocation. The isolated comment during rebuttal appears to be an attempt by the prosecutor to simply remind the jury that J.B.'s alleged provocation would likely not be wholly ignored by the trial judge during sentencing.

[18] Even assuming, as Clark suggests, that the prosecutor's comment during rebuttal in any way confused or misled the jurors as to their role as factfinders regarding the self-defense claim, the comment was isolated and, when viewed in context, would hardly qualify as the most egregious or blatant trial error. Moreover, in light of the ample evidence presented by the State rebutting his self-defense claim, Clark has not shown that the comment presented an undeniable and substantial potential for harm under the circumstances. Clark has not met his burden to demonstrate fundamental error. We affirm his convictions.

[19] Affirmed.

Robb, J., and Brown, J., concur.